OPINION
{¶ 1} Defendant-appellant, Michael Dice, appeals the judgment and conviction of the Court of Common Pleas, Marion County, Ohio convicting him of one count of obstructing official police business in violation of R.C. 2921.31(A) and one count of resisting arrest in violation of R.C.2921.33(A).
 {¶ 2} This case stems from an incident involving Dice and his then-wife, Simona Creagh. Dice and Simona had been married for approximately two and a half years, and had twin daughters. Shortly before the incident, they had separated, and Simona took the girls and moved in with her mother. She also took Dice's automobile, a Pontiac Bonneville.
 {¶ 3} On October 11, 2003 an acquaintance of Dice's, Taywyn Mason, who had apparently been staying with him for a short time, came to Dice's residence driving a red Buick Skylark. Mason had contacted Dice earlier and said that he was looking to purchase a vehicle from Mom's Used Car Lot. He had taken the Skylark for a test drive, and wanted Dice to look at the car. According to Dice's testimony, Mason asked him if he wished to test drive the car.
 {¶ 4} At this time, Dice was looking to get his own vehicle back from his wife. He saw this as an opportunity to save himself the walk over to the apartment complex where Simona was now staying with her mother. Dice claims that he and Mason took the Skylark out on the test drive, and that Mason let him drive the vehicle. During the course of the drive, Dice drove over to Simona's apartment complex to see if he could locate his Bonneville. He testified that he found the vehicle near his wife's apartment on Libby Lane, but that several people he knew to be drug dealers were congregating around the vehicle and sitting on the hood. Not wishing to start a confrontation with these individuals, Dice left the vehicle alone. He testified that he did not see his wife at this time.
 {¶ 5} Simona recounts a different story. She testified that she saw Mason and Dice pull into a parking lot across from her apartment. She then testified that she saw Dice, who she says was sitting in the passenger seat, hold up his hand, and that he was apparently holding a gun. Dice and Mason then drove away, and she went out into the street to see if she could get a license plate number for the Skylark. However, she was unable to get a number and saw only that they were dealer plates. Simona then contacted the police and reported that Michael had threatened her with a gun. When Marion City Police Officers arrived at Simona's apartment, she told them the situation and said that she had last seen the Skylark heading northbound.
 {¶ 6} Shortly thereafter, the police located a vehicle matching Simona's description in the parking lot at Mom's Used Car Lot. Dice and Mason had driven the vehicle back to the lot, and Mason was going to negotiate a price for the car. Dice was no longer present; he testified that he didn't want to wait for Mason to finish with the dealer, and instead was going to walk home after stopping for some groceries. Officer Burkey testified that when he arrived on the scene he saw Mason sitting in the passenger seat of the Skylark, and that it looked like he was placing something underneath the seat. Mason then got out of the vehicle carrying a black bag, ignored the officer's order to stop, and walked into the offices at Mom's Used Car Lot. Officer Burkey followed Mason into the office, seized the bag, and began arresting Mason.
 {¶ 7} While this was going on, Officers Marsh, Cox, and Campese arrived on the scene. Simona did as well, as she had followed one of the officers from her apartment. Officer Marsh began searching the vehicle and found a .357 magnum revolver under the front passenger seat. The officers testified that the gun was of a type that would fit into the nylon holster Mason was wearing on his belt.
 {¶ 8} As Dice left the grocery store, he noticed several police cruisers with their lights on outside of Mom's Used Car Lot, but continued walking home. He noticed Simona as he was walking down the street, and when she saw him she began yelling, pointing at him, and jumping up and down to get the attention of the officers. The officers called out to Dice, telling him to stop, but he continued walking away. Dice testified that he knew officers were behind him telling him to stop. When Dice turned to look back he saw the officers coming after him, and then he began to run away.
 {¶ 9} Dice testified that he ran because was scared. A few weeks earlier, he and Simona got into a fight over custody of their daughters. Dice alleges that when he told her he was going to file for divorce and seek custody of the girls Simona responded that she was dating a police officer and that if he ever tried to seek custody she would see to it that he was arrested and thrown in jail. Dice testified that he ran from the police because he believed that one of the officers who was chasing him was Simona's new boyfriend and that the officer "was going to whoop the shit out of [him]."
 {¶ 10} Officers Cox and Campese pursued Dice on foot for several minutes. During the course of the foot chase, Dice successfully scaled a chain link fence. The officers attempted to traverse the fence as well, but both were injured in the process. Officer Cox scratched his leg and tore his gloves on the fence. Officer Campese was more seriously injured; a laceration on his hand required eleven stitches to close. Due to his injury, Officer Campese was unable to continue in the pursuit.
 {¶ 11} Officer Cox finally caught up with Dice and tackled him as he was attempting to hop another fence. Officer Cox was able to get on top of Dice and pin his left arm behind him in a wrist lock. Officer Cox testified that he told Dice to put his right arm behind his back but that Dice kept trying to pull his arm away and crawl out from under him. Dice was holding his right arm straight out above him and would not put it behind his back. Officer Cox needed the help of another officer who arrived on the scene to get Dice's right arm behind his back and put him in handcuffs, placing him under arrest.
 {¶ 12} The Marion County Grand Jury indicted Dice on three counts: having weapons while under disability in violation of R.C. 2923.13(A)(2), obstructing official business in violation of R.C. 2921.31(A), and resisting arrest in violation of R.C. 2921.33(A). Dice pled not guilty to the charges, and a jury trial commenced. The jury returned a verdict of guilty on the charges of obstructing official business, a fifth degree felony, and resisting arrest, a first degree misdemeanor. Dice was found not guilty on the charge of having a weapon while under disability. In its August 10, 2004 judgment entry the trial court sentenced Dice to 11 months imprisonment for the felony charge and 180 days for the misdemeanor, with the sentences to run concurrently. Dice now appeals this conviction.
 I {¶ 13} Dice's first four assignments of error all challenge his convictions on grounds that the jury could not return a guilty verdict on the evidence presented. Those assignments of error assert:
The record contains insufficient evidence to supportdefendant-appellant's conviction for obstructing official business, andcreating a risk of physical harm to a person.
 Defendant-appellant's conviction for obstructing official business, andcreating a risk of physcial harm to a person is contrary to the manifestweight of the evidence.
 The record contains insufficient evidence to supportdefendant-appellant's conviction for resisting arrest.
 Defendant-appellant's conviction for resisting arrest is contrary tothe manifest weight of [the] evidence.
 {¶ 14} The Ohio Supreme Court has set forth a test to determine whether the evidence submitted in a trial was sufficient for the trier of fact to determine a crime had been proven beyond a reasonable doubt. SeeState v. Jenks (1991), 61 Ohio St.3d 259. In Jenks, the Court outlined the sufficiency of the evidence test as follows:
An appellate court's function when reviewing the sufficiency of theevidence to support a criminal conviction is to examine the evidenceadmitted at trial to determine whether such evidence, if believed, wouldconvince the average mind of the defendant's guilty beyond a reasonabledoubt. The relevant inquiry is whether, after viewing the evidence in alight most favorable to the prosecution, any rational trier of fact couldhave found the essential elements of the crime proven beyond a reasonabledoubt.
Id. at paragraph two of the syllabus.
 {¶ 15} In contrast, when reviewing whether the trial court judgment was against the manifest weight of the evidence, the appellate court sits as a "thirteenth juror" and examines the conflicting testimony. State v.Thompkins (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541. In doing so, this court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether "the [factfinder] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Adkins (Sept. 24, 1999), Hancock App. No. 5-97-31, 1999 WL 797144, citing State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717; Thompkins,78 Ohio St.3d at 387, 678 N.E.2d 541.
 {¶ 16} In making this determination, the Ohio Supreme Court has outlined eight factors for consideration, which include "whether the evidence was uncontradicted, whether a witness was impeached, what was not proved, that the reviewing court is not required to accept the incredible as true, the certainty of the evidence, the reliability of the evidence, whether a witness' testimony is selfserving, and whether the evidence is vague, uncertain, conflicting, or fragmentary." State v.Apanovitch (1987), 33 Ohio St. 3d 19, 23 — 24, 514 N.E.2d 394, citingState v. Mattison (1985), 23 Ohio App.3d 10, 490 N.E.2d 926, syllabus. Ultimately, however, "[t]he discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin, 20 Ohio App.3d at 175.
 {¶ 17} In the case sub judice, Dice was first convicted of obstructing official business in violation of R.C. 2921.31, which provides in pertinent part:
(A) No person, without privilege to do so and with purpose to prevent,obstruct, or delay the performance by a public official of any authorizedact within the public official's official capacity, shall do any act thathampers or impedes a public official in the performance of the publicofficial's lawful duties.
 (B) . . . If a violation of this section creates a risk of physicalharm to any person, obstructing official business is a felony of thefifth degree.
The burden is on the prosecution to establish beyond a reasonable doubt all elements of the offense.
 {¶ 18} Dice argues that the prosecution failed to prove that he acted purposefully in obstructing official business. He argues that he did not know that he was being placed under arrest, and therefore it could not have been his "specific intention" to hamper or impede the officers in the performance of their duties. See R.C. 2901.22(A).
 {¶ 19} However, there is nothing in R.C. 2921.31 that requires an individual to know he is being placed under arrest in order to violate that section. R.C. 2921.31 has five essential elements: (1) an act by the defendant; (2) done with the purpose to prevent, obstruct, or delay a public official; (3) that actually hampers or impedes a public official; (5) while the official is acting in the performance of a lawful duty; and (5) the defendant does so act without a privilege to do so. R.C. 2921.31. At issue in this appeal is whether the element of purposefulness requires that the defendant know what specific official act he is impeding by his conduct.
 {¶ 20} It is unclear from the record in this case whether the officers were attempting to arrest Dice before he ran from them. Officer Cox testified that at the time Simona identified Dice to the police they had probable cause to arrest. However, none of the officers indicated to Dice that he was under arrest, and no officer testified that they were attempting to place Dice under arrest at that point in time. In fact, the prosecution submitted no evidence that the officers were placing Dice under arrest at this time.
 {¶ 21} However, it is clear that the officers were in the midst of conducting official police business. Dice testified that he saw numerous police cruisers with their lights on at Mom's Used Car Lot. He testified that he saw that Mason was in custody, that he saw Simona point him out to the police officers, and that the officers were coming towards him and ordering him to stop. It is irrelevant whether or not Dice was being placed under arrest — it was clear from the facts of the case that the officers wanted Dice in connection with their arrest of Mason, which is, of course, official police business.[1]
 {¶ 22} Thus, it is clear from the facts of the case that Dice acted with the specific intent to prevent, obstruct, or delay the officers from what was obviously an ongoing investigation, part of their official duties. This fulfills the statutory element of purposefulness. Therefore, viewed in a light most favorable to the prosecution, the evidence was sufficient for a rational trier of fact to conclude that Dice acted with the requisite mental state.
 {¶ 23} Moreover, it is evident that by running from the police, Dice did hinder the officers' performance of their lawful duty and that Dice was not privileged to do so. Finally, there was sufficient evidence to prove that Dice's actions created a risk of physical harm, as two of the officers were harmed in the subsequent foot chase. Thus, there is sufficient evidence to support the jury determination that all of the elements of R.C. 2921.31 were proven beyond a reasonable doubt, including the elements which elevated Dice's conduct to a fifth degree felony. Accordingly, appellant's first assignment of error is overruled.
 {¶ 24} Likewise, we are unable to conclude that the jury clearly lost its way in reviewing the evidence and the credibility of the witnesses such that their decision constitutes a miscarriage of justice. The only evidence contradicting proof of the elements of obstructing official business was the self-serving testimony of the defendant, who claimed that he thought the police were after him on "unofficial" business. The bulk of the evidence was consistent, reliable, and unconflicting; this evidence tended to prove all of the required elements of the offense. Based on the foregoing, we find that appellant's conviction for obstructing official business was not against the manifest weight of the evidence. Appellant's second assignment of error is overruled.
 {¶ 25} Dice also challenges his conviction for resisting arrest on the grounds of insufficiency of the evidence and as being against the manifest weight of the evidence. Dice was found guilty of a violation of R.C. 2921.33(A), which provides:
No person, recklessly or by force, shall resist or interfere with alawful arrest of the person or another.
 {¶ 26} First, there is sufficient evidence in the record that, after viewed in a light most favorable to the prosecution, a trier of fact could find the elements of resisting arrest. Dice argues that there was insufficient evidence to prove that he acted recklessly or by force.
 {¶ 27} "Force" is defined as any violence, compulsion or constraint physically exerted by any means upon or against a person or thing." R.C.2901.01(1). The evidence in the record is that Dice first fled from the police officers and then struggled with them when Officer Cox tackled him. Dice claims that he was only struggling because Officer Cox had his knee in the middle of Dice's back causing him pain and making it difficult to breathe. However, two officers testified that Dice fought Officer Cox's attempts to place his arms behind his back, and that he attempted to get out from underneath the officer. It is also clear that Officer Cox was unable to execute the arrest without the help of another officer due to Dice's continued attempts to force his way out of Officer Cox's grasp. Such evidence is sufficient for a trier of fact to find that Dice attempted to physically compel the officers to let him up. Accordingly, there was sufficient evidence to convict Dice for resisting arrest; appellant's third assignment of error is overruled.
 {¶ 28} Second, we are unable to conclude that the evidence in the record demonstrates that the factfinder clearly lost its way or committed a miscarriage of justice. Here, the jury, as finder of fact, was best able to view the witnesses and judge their credibility. Although Dice claims that he was only struggling with the officer because he was in pain and could not breathe, there was ample evidence in the record to support the jury's determination that Dice was struggling with the Officers in order to get away. Therefore, we find that the jury's determination that Dice was resisting arrest is not against the manifest weight of the evidence. Dice's fourth assignment of error is overruled. 13
 II {¶ 29} Dice's fifth assignment of error asserts:
Prosecutorial misconduct rendered defendant-appellant's trialfundamentally unfair in violation of the Constitutions of Ohio and theUnited States. Dice argues that the prosecutor in his trial engaged in misconduct in two ways: (1) she had improper contact with a juror during the trial, and (2) she asked an improper question during her cross examination of Dice.
 {¶ 30} Appellant first argues that the trial court should have granted a mistrial after the prosecutor talked to one of the jurors during a break in the trial. However, the decision to grant a mistrial is in the sound discretion of the trial court, and a mistrial should not be granted because of some minor error or irregularity has arisen in a criminal trial. State v. Reynolds (1988), 49 Ohio App.3d 27, 33, citing Bowmanv. Alvis (1950), 88 Ohio App. 229. A "mistrial need be declared only when the ends of justice so require and a fair trial is no longer possible." State v. Franklin (1991), 62 Ohio St.3d 118, 127, citingIllinois v. Somerville (1973), 410 U.S. 458, 462 — 63.
 {¶ 31} In the instant case, the prosecutor's contact with the juror in question was very limited. In the middle of trial, the juror got up unexpectedly and asked the court to be excused. The court excused her and granted a brief recess. The record indicates that there was a discussion off the record concerning whether or not the juror had gotten sick. During the recess, the prosecutor noticed the juror coming back down the hall to the courtroom looking disoriented and asked if she was alright. The juror replied that she was okay. This was the extent of the communication between the juror and the prosecutor.
 {¶ 32} When the proceedings recommenced, the prosecutor immediately made the court and defense counsel aware of her contact with the juror. The judge and the attorneys had a discussion on the record and outside of the presence of the jury. The court then called in the juror in question and asked her about her conversation with the prosecutor. The juror confirmed the extent of the conversation with the prosecutor, and indicated that the conversation would in no way impair her ability to act fair and impartially. The court re-emphasized the jury's duty to listen to all of the evidence presented before forming an opinion of the case, and the juror confirmed that nothing had happened that would prevent her from considering all of the evidence before making an impartial decision. The court then found that the prosecutor's contact with the juror was incidental and unintentional, and that the contact in no way prohibited the juror from acting impartially.
 {¶ 33} We find that this minor irregularity at trial did not make the trial so unfair as to deny Dice's due process rights. The prosecutor's minimal contact with the juror in this instance did not affect the juror's ability act fair and impartially, and therefore did not affect the fairness of Dice's trial. Thus, the "ends of justice" did not require the trial court to declare a mistrial, and the trial court did not abuse its discretion in failing to do so.
 {¶ 34} Dice also claims that the prosecutor engaged in misconduct by asking him about his prior arrests during her cross examination of him. "[T]he test for prosecutorial misconduct is whether the remarks were so improper and, if so, whether the remarks prejudicially affected the accused's substantial rights." State v. Twyford (2002), 94 Ohio St.3d 340,354 — 55; see also, State v. Smith (1984), 14 Ohio St.3d 13, 14. Thus, an improper question or remark made by the prosecutor can nevertheless fail to constitute reversible error. State v. Satta, Marion App. No. 9-01-38, 2002-Ohio-5049, at ¶ 27. Ultimately, "the touchstone of this analysis `is the fairness of the trial, not the culpability of the prosecutor.'"Tywford, 94 Ohio St.3d at 355.
 {¶ 35} In the case sub judice, the prosecutor asked Dice, "You'll agree that you've been previously under arrest for a multitude of times?" This question, although clearly improper, did not rise to the level of reversible error in this case. First, Dice himself had opened up the issue of his previous arrest during his direct testimony when he indicated that he was under disability. Thus, the prosecutor was allowed to ask questions pertaining to the arrest and conviction which caused him to be placed on disability.
 {¶ 36} Second, the fact that Dice had previously been placed under arrest was relevant to the issue of whether Dice knew that he was being placed under arrest when he struggled to get out of the officer's grasp. Dice argued at trial that he could not have been guilty of resisting arrest because the officers had not told him that that they were arresting him. The fact that Dice had been under arrest on previous occasions could reasonably be interpreted as proof that Dice knew he was under arrest when the officer was trying to place him in handcuffs.
 {¶ 37} Therefore, given the entire context and relevancy of the question, we do not find that the question prejudiced the defendant's substantial rights. The testimony before the jury had already made the jury aware that Dice had previously been arrested and convicted of a crime. Thus, the question had little effect on the jury's ability to review the evidence impartially.
 {¶ 38} Based on the foregoing, Dice's fifth assignment of error is overruled, and the judgment of the trial court is hereby affirmed.
Judgment Affirmed.
 Cupp, P.J. and Bryant, J., concur.
[1] To the extent this opinion is inconsistent with our opinion inState v. Smith (March 31, 2000), Allen App. No. 1-99-65, 2000-Ohio-1739, unreported, 2000 WL 281612, that decision is overruled. In Smith, a majority of this court held that the act of fleeing from a police officer during a Terry stop does not violate R.C. 2921.31(A). Id. at *4. However, we find that the Smith case was improvidently decided, and hereby adopt the position articulated in Judge Bryant's dissent in that case.