[Cite as *State v. Clifford*, 2020-Ohio-5095.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES: |
| | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | Hon. W. Scott Gwin, J. |
| | Hon. Craig R. Baldwin, J. |
| -vs- | |
| | Case No. 19 CAA 12 0068 |
| LINDSEY CLIFFORD | |
| Defendant-Appellant | O P I N IO N |


CHARACTER OF PROCEEDINGS:    Appeal from the Delaware County Court
of Common Pleas, Case No. 19 CRI 02
0143


JUDGMENT:    Affirmed

DATE OF JUDGMENT ENTRY:    October 28, 2020


APPEARANCES:


For Plaintiff-Appellee    For Defendant-Appellant

MELISSA A. SCHIFFEL    WILLIAM T. CRAMER
Delaware County Prosecuting Attorney    470 Olde Worthington Road, Suite #200
    Westerville, Ohio  43082
R. JOSEPH VARVEL
Assistant Prosecuting Attorney
Delaware County Prosecutor's Office
145 North Union Street
Delaware, Ohio  43015

*Hoffman, P.J.*

{¶1}　Appellant Lindsey Clifford appeals the judgment entered by the Delaware County Common Pleas Court convicting her of engaging in a pattern of corrupt activity (R.C. 2923.32(A)(1)), additional prohibited activities ( R.C. 1315.55(A)(1)), trafficking in cocaine ( R.C. 2925.03(A)(1)), and receiving stolen property (R.C. 2913.51(A)), and sentencing her to an aggregate prison term of four years.  Appellee is the state of Ohio.

STATEMENT OF THE FACTS AND CASE

{¶2}　During the summer of 2018, Appellant and her boyfriend, Terrance Baker, resided in an apartment in Columbus, Ohio.  Also living in the apartment were Donald Gorey, Shelley Hagerman, Antonio Estrada, and Leanna Jimenez.  Jimenez moved into the apartment at the request of Appellant and Baker, who asked her "to do what's going on at Home Depot" in order to make money.  Tr. 422.

{¶3}　Gorey, Hagerman, Estrada, and Jimenez would travel to Home Depot stores in the Columbus metro area, including stores in Delaware County, in a maroon Trailblazer owned by Appellant.  Sometimes Appellant would drive, and once or twice she went into Home Depot with the group.  Baker did not travel with the group.  The group would enter the store and steal Milwaukee and DeWalt power tool sets.  At one point in time, the group went nearly every day to a Home Depot store in the area to steal power tools.

{¶4}　The group would return the tools to the apartment, where they would find the value of the items on the internet.  They would exchange the items with Appellant and Baker for a percentage value of either cash or crack cocaine.  Baker was in charge of the cash, but either Appellant or Baker would distribute crack cocaine in exchange for the

power tools.  Appellant kept track of the transactions in a log book.  Baker then sold the stolen tools to a man the group knew only as "The Russian."

{¶5}   During this time, Home Depot's shoplifting policy allowed only asset protection specialists (APS) to apprehend suspects or enter theft reports in the company's internal database.  Regular store employees were authorized to report incidents to the store manager, but were instructed not to stop suspects or call law enforcement.  APS employees were to enter incidents into the database within 24 hours of an incident.  Absent corresponding violence, individual incidents are typically not reported to law enforcement; thus, 85-90% of incidents are not reported.

{¶6}   Jamie Mansfield and Sean Frame worked for Home Depot out of Michigan as organized retail crime investigators.  In July of 2018, they became aware of the group of theft incidents conducted by the people living in Appellant's apartment.  The group was known inside the company as the Black Wig Group, based on Jimenez sometimes wearing a black wig into the store as a disguise.

{¶7}   Mansfield and Frame traveled to Ohio in August, 2018, to further investigate the series of thefts.  On August 7, 2018, they conducted surveillance outside a Delaware Home Depot store.  They observed a vehicle later identified as Appellant's vehicle arrive at the store.  Appellant was driving the vehicle.  Gorey and Jimenez entered the store and stole a Milwaukee portable tool power kit.  Frame and Mansfield followed the group to another store in Franklin County.  All three members of the group entered the store. Appellant came out of the store with a DeWalt tool kit.  She drove the Trailblazer to the front of the store.  Gorey and Jimenez pushed a cart out of the store at a rapid pace,

loaded items from the cart into the Trailblazer, and drove away. A cashier and some customers came out of the store after seeing what was happening.

{¶8} Frame and Mansfield attempted to follow the Trailblazer, but lost it in traffic. They eventually located the vehicle at the apartment complex where Baker and Appellant lived. They set up surveillance from a nearby Taco Bell parking lot. From there, Frame and Mansfield watched Gorey, Jimenez and Baker carrying DeWalt and Milwaukee power tools from the apartment to the Trailblazer. Shortly thereafter, Baker drove away in the Trailblazer. Frame and Mansfield attempted to follow, but lost the Trailblazer near a highway on-ramp.

{¶9} Surveillance continued throughout the next week, during which time the group continued to steal tools from Home Depot stores throughout the Columbus area. On August 17, 2018, law enforcement obtained and executed a search warrant on the apartment. Police seized a marijuana bong, a marijuana grinder, loose marijuana, crack pipes, Chore Boy, a syringe, digital scales, and a Spider security device. From the bedroom shared by Baker and Appellant, they seized notebooks containing UPC codes or model numbers for tools. One of the notebooks had Appellant's name written on it. They also seized a Milwaukee charger and battery.

{¶10} Gorey, Jimenez and Appellant were arrested. Appellant called Baker from the jail, and Baker told Appellant not to "mention anything about anything." When she called him again, Baker told Appellant he "was thinking about shitting his head" and was worried police had his phone. Appellant told Baker to get out of town.

{¶11} Gorey and Jimenez agreed to cooperate with the police in exchange for plea agreements. Appellant and Baker were charged by joint indictment with engaging

in a pattern of corrupt activity (R.C. 2923.32(A)(1)), additional prohibited activities ( R.C. 1315.55(A)(1)), trafficking in cocaine ( R.C. 2925.03(A)(1)), trafficking in heroin (R.C. 2925.03(A)(1)) and receiving stolen property (R.C. 2913.51(A)). Appellant was additionally charged with robbery (R.C. 2911.02(A)(3)). The case proceeded to joint bench trial in the Delaware County Common Pleas Court. Following the presentation of evidence, the court dismissed the charge of trafficking in heroin. The court found Appellant not guilty of robbery. Appellant was convicted of the remaining charges. The court found the trafficking in cocaine and receiving stolen property convictions merged into the additional prohibited activities conviction, and the State elected to have Appellant sentenced for additional prohibited activities. The court sentenced Appellant to four years incarceration for engaging in a pattern of corrupt activity and to thirty months incarceration for additional prohibited activities, to be served concurrently.

{¶12} It is from the November 21, 2019 judgment of conviction and sentence Appellant prosecutes her appeal, assigning as error:

APPELLANT'S RIGHT OF CONFRONTATION WAS VIOLATED BY THE ADMISSION OF HEARSAY STATEMENTS FROM PERSONS WHO CLAIMED TO WITNESS SHOPLIFTING AND STORE THEFT REPORTS DETAILING THE ALLEGED SHOPLIFTING.

{¶13} Appellant argues the admission of hearsay evidence violated her right to confront the witnesses against her. She specifically argues testimony concerning the observations of store employees, who did not testify, of thefts which took place inside the

stores, both as relayed to Frame and Mansfield and as detailed in the Risk 360 reports prepared by Home Depot employees, violated her right to confront the witnesses against her.

**{¶14}** The Confrontation Clause of the Sixth Amendment states, "In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." Out-of-court statements by a witness which are testimonial in nature are barred, under the Confrontation Clause, unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness. *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). If testimony qualifies as nonhearsay, it does not implicate the Confrontation Clause. *Id.* at 59, *citing Tennessee v. Street,* 471 U.S. 409, 414, 105 S.Ct. 2078, 85 L.Ed.2d 425 (1985); *State v. Maxwell*, 139 Ohio St. 3d 12, 9 N.E.3d 930, 2014-Ohio-1019, ¶131. Evid. R. 801(C) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." We review trial court rulings which implicate the Confrontation Clause de novo. *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶ 97, *citing State v. Hymore*, 9 Ohio St.2d 122, 128, 224 N.E.2d 126 (1967), and *United States v. Henderson*, 626 F.3d 326, 333 (6th Cir. 2010).

**{¶15}** We note the surveillance videos and photographs admitted into evidence are not hearsay, as there are no statements in either the videos or the photographs. Because they are not hearsay, they do not implicate the Confrontation Clause. *Crawford, supra.* However, the trial court also admitted testimony concerning employees' observations of thefts inside the store, as well as the Risk 360 reports prepared by Home

Depot employees which included SKU numbers, the value of the items stolen, and descriptions of the thefts and the persons involved. The court found the testimony and reports were admissible as present sense impressions and business records, and thus exceptions to the hearsay rule pursuant to Evid. R. 803(1) and (6). The court found their admission did not violate the Confrontation Clause, as they were non-testimonial in nature.

**{¶16}** In *Crawford*, the United States Supreme Court suggested business records are "by their nature" nontestimonial. *Crawford* at 56, 124 S.Ct. 1354. And subsequently in *State v. Craig*, 110 Ohio St.3d 306, 2006-Ohio-4571, 853 N.E.2d 621, ¶ 82, the Supreme Court of Ohio held business records "are not 'testimonial in nature because they are prepared in the ordinary course of regularly conducted business and are "by their nature" not prepared for litigation.'"

**{¶17}** However, in *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009), the items of evidence at issue were reports by a company which provided forensic analysis on seized substances to establish whether they were illegal. The United States Supreme Court held despite the fact the records were kept in the regular course of the company's business, the results of forensic drug testing were testimonial—they were requested by the police and prepared for presentation at trial, and were therefore subject to exclusion under the Confrontation Clause:

> Respondent also misunderstands the relationship between the business-and-official-records hearsay exceptions and the Confrontation Clause. As we stated in *Crawford*: "Most of the hearsay exceptions covered

statements that by their nature were not testimonial--for example, business records or statements in furtherance of a conspiracy." Business and public records are generally admissible absent confrontation not because they qualify under an exception to the hearsay rules, but because--having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial--they are not testimonial. Whether or not they qualify as business or official records, the analysts' statements here--prepared specifically for use at petitioner's trial--were testimony against petitioner, and the analysts were subject to confrontation under the Sixth Amendment.

**{¶18}** (Citations omitted.) *Id.* at 324, 129 S.Ct. 2527. Because the analyst who created the records did not testify and was not subject to cross-examination, the forensic analysis was inadmissible because its admission violated the Confrontation Clause. *Id.*

**{¶19}** Thereafter, in *Bullcoming v. New Mexico*, 564 U.S. 647, 663-65, 131 S.Ct. 2705, 180 L.Ed.2d 610 (2011), the Court held admission of the report of a defendant's blood-alcohol level violated the defendant's right to confront the analyst who prepared the report. The Court held the report was testimonial because it was a statement made in order to prove a fact at defendant's criminal trial, and the testimony of a substitute analyst who did not perform or observe the reported test did not satisfy the right to confrontation. The lower court held the surrogate testimony was "adequate to satisfy the Confrontation Clause in this case because [the actual analyst] 'simply transcribed the resul[t] generated by the gas chromatograph machine,' presenting no interpretation and exercising no

independent judgment," and the defendant's "true accuser" was "the machine, while [the testing analyst's] role was that of 'mere scrivener.' " *Id.* at 659-60, 131 S.Ct. 2705. The Supreme Court disagreed, noting the surrogate analyst's testimony "reported more than a machine-generated number," and the surrogate could not convey what the original analyst knew and observed, or expose any lapses or inaccuracies by the original analyst. *Id.* at 660, 131 S.Ct. 2705.

{¶20} In the instant case, we find the SKU numbers and the value of items taken, included in the Risk 360 reports, were non-testimonial in nature. These figures served a business purpose of Home Depot separate and apart from their potential use for prosecution, as these figures were necessary for inventory and accounting records of the stores impacted. However, we find the descriptions of the thefts included in the reports and relayed orally to Frame and Mansfield were testimonial in nature. Although there was evidence most of the Risk 360 reports generated by the company do not result in prosecution, we find no business use for the descriptions of the perpetrators of theft offenses in the store other than the potential use for apprehension and prosecution. We find this particularly true in the instant case, where some of these observations were made subsequent to Frame and Mansfield traveling from Michigan to Ohio for the express purpose of investigating and apprehending the suspects involved in the Black Wig Group. In fact, shortly after arriving in Ohio, Frame and Mansfield made contact with law enforcement in Delaware County concerning their investigation. We find these descriptions were testimonial in nature, and their admission therefore violated Appellant's right to confront the witnesses against her.

**{¶21}** But even in cases where the defendant has established a violation of rights under the Confrontation Clause, the Supreme Court of Ohio has consistently applied a harmless-error analysis to determine whether the issue prejudiced the defendant. *See McKelton* at ¶ 192, *quoting Harrington v. California*, 395 U.S. 250, 254, 89 S.Ct. 1726, 23 L.Ed.2d 284, (1969).

**{¶22}** Crim.R. 52(A) defines harmless error in the context of criminal cases and provides: "Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." Under the harmless-error standard of review, "the government bears the burden of demonstrating that the error did not affect the substantial rights of the defendant." *State v. Perry*, 101 Ohio St.3d 118, 2004–Ohio–297, 802 N.E.2d 643, ¶ 15, *citing United States v. Olano*, 507 U.S. 725, 741, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). First, it must be determined whether the defendant was prejudiced by the error, i.e., whether the error had an impact on the verdict. Second, it must be determined whether the error was not harmless beyond a reasonable doubt. Lastly, once the prejudicial evidence is excised, the remaining evidence is weighed to determine whether it establishes the defendant's guilt beyond a reasonable doubt. *State v. Harris,* 142 Ohio St.3d 211, 2015–Ohio–166, 28 N.E.3d 1256, ¶ 37.

**{¶23}** The instant case was a bench trial, in which the trial court explained at length its reasoning for finding Appellant guilty. The trial court based its finding of guilt almost exclusively on the testimony of Gorey and Jimenez. While Appellant argues their testimony is not credible, the trial court took note of the potential credibility issues with their testimony, and explained its reasons for finding the testimony in the instant case to be credible. Tr. 1506-1511. Nothing in the trial court's explanation of its reasons for

finding Appellant guilty suggests the court relied on the Risk 360 reports or the descriptions of the offenses and perpetrators provided by employees of Home Depot. Tr. 1511-1521. The trial court further had the opportunity to view the photos and videos, in which both Gorey and Jimenez identified themselves, Appellant, and others in the group stealing items from Home Depot. In addition, Frame and Mansfield, who both testified at trial, testified they observed Appellant driving the group to Home Depot stores where thefts were reported, and observed Appellant enter a store and walk out with a portable power tool kit. We find admission of the Risk 360 reports and testimony concerning observations of employees of the Home Depot stores to be harmless in the instant case.

{¶24} The assignment of error is overruled.

{¶25} The judgment of the Delaware County Common Pleas Court is affirmed.

By: Hoffman, P.J.

Gwin, J. and

Baldwin, J. concur