[Cite as *State v. Acker*, 2023-Ohio-2085.]

COURT OF APPEALS
HOLMES COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | Case No. 22CA008 |
| | : | |
| CORY ACKER | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:          Appeal from the Holmes County
                                  Municipal Court, Case No. 21CRB00177


JUDGMENT:                         AFFIRMED


DATE OF JUDGMENT ENTRY:           June 21, 2023


APPEARANCES:

For Plaintiff-Appellee:                    For Defendant-Appellant:

ROBERT K. HENDRIX                          PATRICK BROWN
Assistant Prosecutor                       439 North Market St., Suite A
Holmes County                              Wooster, OH 44691
164 E. Jackson St.
Millersburg, OH 44654

*Delaney, J.*

{¶1} Appellant Cory Acker appeals from the August 12, 2022 judgment entry of conviction and sentence of the Holmes County Municipal Court, incorporating the trial court's July 8, 2022 Judgment Entry.  Appellee is the state of Ohio.

**FACTS AND PROCEDURAL HISTORY**

{¶2} The following facts are adduced from the record of appellant's bench trial on July 8, 2022.

{¶3} On September 29, 2021, Deputy (now Sgt.) Bernhart of the Holmes County Sheriff's Department was dispatched to a noise complaint on Township Road 506. Bernhart testified that upon dispatch, he customarily checks the driving status of an identified suspect before responding.  In this case, appellant was the suspect identified in the noise complaint, and upon checking his driving status, Bernhart discovered an active warrant.

{¶4} Defense trial counsel immediately objected to Bernhart's testimony about the existence of the warrant, arguing the statement was offered for the truth of the matter asserted. The prosecutor responded that the statement was offered for its effect on the listener, and the trial court overruled the objection.

{¶5} Bernhart and another deputy responded to the address.  Bernhart is familiar with appellant and recognized him on sight.  The door of the shop was open and appellant was visible inside, listening to music and spraying undercoating on a semi.  The deputies approached appellant and Bernhart advised him of the noise complaint, which was remedied.

{¶6} Bernhart further advised appellant of the active warrant and appellant disagreed that a warrant existed, stating his attorney told him the matter was resolved.

{¶7} Appellee asked Bernhart how deputies confirm the existence of an active warrant, and Bernhart replied that "during Covid," the deputy would call dispatch or corrections to check for active warrants, and were also required to contact a "corrections sergeant." Bernhart testified he took those steps in the instant case and defense trial counsel objected. The trial court overruled the objection. Bernhart further testified he confirmed the existence of an active warrant, and counsel again objected. The trial court overruled the objection.

{¶8} Bernhart testified his next step would have been to take appellant into custody. Appellant showed him texts on his phone from his attorney, purporting to establish there was no warrant. Bernhart testified appellant's demeanor throughout the encounter was cooperative and polite, although he became more agitated as the deputies disagreed with him about the existence of the warrant. When he realized deputies intended to execute the arrest warrant, appellant said he had an obligation out of state the next day. Appellant walked around the corner of the semi, momentarily out of Bernhart's sight, and ran away.

{¶9} Bernhart told the other deputy to pursue appellant as Bernhart went to his vehicle. Bernhart yelled at appellant to stop, and warned he would release his K-9 if appellant didn't return. Appellant briefly stopped, turned, and looked at Bernhart, then continued running around the corner of the house. Bernhart heard a loud vehicle exhaust and saw a silver passenger car speed away.

{¶10} Deputies were ordered to terminate the vehicle pursuit and lost sight of appellant's vehicle. Deputies put out a BOLO for appellant in Holmes and adjacent counties. Appellant was not located that evening. Bernhart testified it would have taken about 30 minutes to process appellant on the warrant, but because he fled, he spent the rest of the shift looking for him.

{¶11} Upon cross-examination, Bernhart acknowledged there was no noise ordinance for appellant's location and he would not have been cited for the noise complaint. However, Bernhart pointed out that he customarily responds to noise complaints and speaks to the parties involved to resolve disputes. Bernhart acknowledged he did not have a paper copy of an arrest warrant for appellant and did not show appellant an arrest warrant.

{¶12} Appellee rested at the conclusion of Bernhart's testimony without presenting additional witnesses or introducing any exhibits. Defense trial counsel moved for a judgment of acquittal pursuant to Crim.R. 29(A), arguing appellee failed to present any evidence that a warrant existed; thus appellee failed to prove Bernhart was engaged in an authorized act and appellant could not be guilty of obstructing official business. Appellee responded that Bernhart testified to his customary procedure in checking for a warrant and confirmed the presence of a warrant, therefore his testimony established he was a public official performing an authorized act in his official capacity.

{¶13} The trial court overruled the motion.

{¶14} Appellant testified as the sole defense witness. He stated he was painting a truck on the evening of September 29 when deputies entered his shop without

permission.  Appellant was surprised to see the deputies and did not believe there was a warrant for his arrest because his attorney assured him there was no warrant.

{¶15} Appellant confirmed he spoke to the deputies and showed them text messages on his phone.  Bernhart returned to the cruiser and appellant fled.  When asked why he fled, appellant testified he needed to be in Texas that weekend for a truck show, and he believed the deputies could have printed a copy of the warrant in their vehicles if one existed.  Therefore, in his estimation, the deputies had no lawful reason to arrest him and he was entitled to flee.

{¶16} Upon cross-examination, appellant acknowledged he was convicted in a separate case in the same court and sentenced to a jail term. He testified he called the jail twice on the day he was ordered to report but someone told him he "was not on the schedule." T. 19. He "didn't hear anything back from the courts" and therefore believed no warrant was issued, although he never served any of the jail sentence. Appellant reiterated the deputies had no reason to arrest him so he ran and drove off. He did not go to Texas that weekend but called his attorney the next day.

{¶17} Defense trial counsel renewed the motion for acquittal at the close of all of the evidence.  The trial court asked counsel if appellant's purpose was to obstruct or delay the exercise of what he believed to be an improper act, and defense trial counsel agreed this was a fair characterization of the evidence. Appellant's purpose was to get away from the deputies because he didn't believe their actions were authorized.  T. 24.

{¶18} The trial court overruled the motion for acquittal and found appellant guilty as charged, finding that the "evidence is clear Mr. Acker's purpose is to clearly delay or obstruct the officer's performance of [his] duties," and even if the officer was mistaken

about the validity of the warrant, the process of confirming and executing a warrant were part of the deputies' official duties.

*Misdemeanor charge, bench trial, conviction, and sentence*

{¶19} Appellant was charged by criminal complaint with one count of obstructing official business pursuant to R.C. 2921.31(A), a misdemeanor of the second degree. Appellant entered a plea of not guilty and the matter proceeded to bench trial on July 8, 2022. The trial court found appellant guilty as charged and issued a written Judgment Entry containing findings of fact.  On August 12, 2022, the trial court sentenced appellant to a jail term of 30 days with 20 days suspended and a fine of $250.

{¶20} Appellant now appeals from the judgment entries of his conviction and sentence.

{¶21} Appellant raises three assignments of error:

**ASSIGNMENTS OF ERROR**

{¶22} "I. THE TRIAL COURT ERRED BY ADMITTING HEARSAY TESTIMONY ABOUT A WARRANT INTO EVIDENCE."

{¶23} "II. THE TRIAL COURT ERRED BY DENYING MR. ACKER'S CRIMINAL RULE 29 MOTION FOR A JUDGMENT OF ACQUITTAL, AS THERE WAS INSUFFICIENT EVIDENCE TO SUSTAIN A CONVICTION."

{¶24} "III. MR. ACKER'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

**ANALYSIS**

I.

{¶25} In his first assignment of error, appellant argues the trial court erred in admitting hearsay evidence of the existence of the warrant. We disagree.

{¶26} "[A] trial court is vested with broad discretion in determining the admissibility of evidence in any particular case, so long as such discretion is exercised in line with the rules of procedure and evidence." *Huth v. Kus*, 5th Dist. No. 2017 AP 06 0015, 2018-Ohio-1931, 113 N.E.3d 140, ¶ 30, quoting *Rigby v. Lake Cty.*, 58 Ohio St.3d 269, 271, 569 N.E.2d 1056 (1991). An abuse of discretion is more than a mere error in judgment; it is a "perversity of will, passion, prejudice, partiality, or moral delinquency." *Pons v. Ohio State Med. Bd.* 66 Ohio St.3d 619, 621, 614 N.E.2d 748 (1993). When applying an abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. *Id.*

{¶27} "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Evid.R. 801(C). Hearsay is generally not admissible unless it falls within one of the recognized exceptions. Evid.R. 802; *State v. Steffen*, 31 Ohio St.3d 111, 119, 509 N.E.2d 383 (1987); *MCM Home Builders, LLC v. Sheehan*, 5th Dist. Delaware No. 18 CAE 09 0074, 2019-Ohio-3899, ¶ 37. To constitute hearsay, two elements are needed: first, an out-of-court statement; and second, the statement must be offered to prove the truth of the matter asserted. *State v. Maurer*, 15 Ohio St.3d 239, 262, 473 N.E.2d 768 (1984). If either element is not present, the statement is not "hearsay." *Id.*

{¶28} Appellant argues the trial court should not have admitted "the dispatcher's statement that a warrant existed" because such evidence is inadmissible hearsay. Brief, 5. We are unable to find any such "statement" made by any out-of-court witness. Our examination of the record reveals the following testimony regarding Bernhart's inquiry into the warrant:

> * * * *.

> [Bernhart]: So typically when a call for service comes in typically before we start to respond we'll take a second look at our notes on our MDT or Mobile Data Terminal to see what the calls about. A lot of times we'll check the complainant if we know who a possible suspect would be, a lot of times we'll check them as well. What I mean by check them a lot of times; we'll run their driver's license checking for active warrants something like that.

> [Prosecutor]: Okay so is it common for you to know what type of call you're going to?

> [Bernhart]: Yes.

> [Prosecutor]: What, where that call was located?

> [Bernhart]: Yes.

> [Prosecutor]: And the parties involved?

> [Bernhart]: Yes correct.

> [Prosecutor]: And specifically with the parties involved do you often times in advance know whether or not they have a warrant?

> [Bernhart]: Yes that is correct.

[Prosecutor]: So in this specific situation how did you start that call?

[Bernhart]:So prior to responding I had looked at the, the call notes and the complainant or the complaint for the call for service was that [appellant] was playing loud music at 9:30 at night. **I checked [appellant's] driving status, which comes up when I checked him it came up that he had an active warrant.**

[Prosecutor]: And is [appellant] an individual (unintelligible).

[Defense trial counsel]:  I would object I, that's offered for the truth of the matter asserted Your Honor that he actually had a warrant anything dispatch told him or anything a computer (unintelligible). **I understand he's just testifying about the call for service, but I just object at that facts offered to the fact that he actually had a warrant (*sic*).**

THE COURT:  Response, [prosecutor].

[Prosecutor]: Your Honor I think it's offered for the effect on the listener that how the officer was trying to carry out his public duties at the time (*sic*). It was his impression that he had a warrant at the time and he was going to well, the testimony that is going to be provided is going to show that he acted on that information.

[Defense trial counsel]: I don't have a problem with that I would just object that that's offered for the truth of the fact that he had a warrant.  That's my only objection.  Thank you.

THE COURT: Well I think it falls under the public records exception on hearsay, but if it's only being offered for the effect it had on the officer then objection will be overruled.

* * * *.

T. 5-6. (Emphasis added).

{¶29} And the following testimony describes Bernhart's encounter with appellant:

* * * *.

[Prosecutor]: Now so, when you get there your issue is two-fold essentially. You have a complaint and now you, you have this information that makes you believe there's a warrant?

[Bernhart]: Correct yes.

[Prosecutor]: In your process what do you do next with regards to the warrant?

[Bernhart]: Sure so in, in, in that respect typically we will confirm the warrant. What I mean by that a lot of times it's a simple phone call either to dispatch or to corrections. Typically the confirmation goes through dispatch. At the time due to Covid 19 restrictions in corrections we also had to seek approval through the corrections sergeant at the time.

[Prosecutor]: **Okay and did you go through that process in this case?**

[Bernhart]: **Yes I did.**

[Defense trial counsel]:  **Objection to anything dispatch or anyone at the sheriff's office told the sergeant.**

[Prosecutor]:  **I don't think at this point he's testified to anything about (unintelligible).**

THE COURT:  I haven't heard any answer about that yet have I?

[Defense trial counsel]:  I thought he testified.

[Prosecutor]:  I don't believe so.

[Defense trial counsel]: Okay I'm sorry I thought he testified that he had gone through that process in this case and that they told him there was a warrant. That's what I heard, but if that's not what he said then.

THE COURT:  Okay.  * * * *.  Objection overruled at this point.

[Prosecutor]:  **Had, were you able to go through that process and confirm the Defendant's warrant?**

[Bernhart]:  **Yes.**

[Defense trial counsel]:  **Objection hearsay.**

THE COURT:  I'm going to overrule at this point I believe this falls under an exception to the hearsay rule.

[Bernhart]: Yes I was.

[Prosecutor]:  So after you confirmed the warrant, what is your next step?

[Bernhart]:  So then he, the next step after the warrant was confirmed would be to take [appellant] into custody.

[Prosecutor]: Okay and again, is this part of your routine job as at the time a deputy of the sheriff's office?

[Bernhart]:  Yes it is.

[Prosecutor]:  Okay and when, when you're done confirming the warrant do you go back and speak with [appellant]?

[Bernhart]:  Yes I did.

* * * *.

T. 7-8.  (Emphasis added).

{¶30} Upon our review of Bernhart's testimony, we do not find that he testified to a statement by an out-of-court witness; instead, he testified about his own investigation of the warrant. A "statement" is (1) an oral or written assertion or (2) nonverbal conduct intended to be an assertion. Evid.R. 801(A). For hearsay purposes, an "assertion" is "a statement about an event that happened or a condition that existed." *State v. Wellman*, 10th Dist. Franklin No. 05AP-386, 2006-Ohio-3808, ¶ 14, citing *State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, 767 N.E.2d 166, ¶ 61; *State v. Carter*, 72 Ohio St.3d 545, 549, 1995-Ohio-104, 651 N.E.2d 965, quoting 2 McCormick, *Evidence,* Section 246, at 98 (4th Ed.1992), ("An 'assertion' for hearsay purposes 'simply means to say that something is so, e.g., that an event happened or that a condition existed.' "). There is no "statement" for hearsay purposes where a witness does not testify about "what someone else said, wrote, or did." *State v. Maiolo*, 2d Dist. Clark No. 2015-CA-15, 2015-Ohio-4788, ¶ 14, citing Evid.R. 801(A).

{¶31} Instead, Bernhart's testimony related to his investigation of the noise complaint, his discovery of the warrant, and the ensuing conversation with appellant. Even if we strained to identify a "statement" made to Bernhart regarding the warrant, a statement is not hearsay when offered for a purpose other than to prove the truth of the matter asserted. *State v. Moore*, 5th Dist. Coshocton No. 14CA0028, 2016-Ohio-828, ¶ 74, citing *State v. Davis,* 62 Ohio St.3d 326, 343, 581 N.E.2d 1362 (1991). Testimony about finding the warrant and investigating appellant's claims was necessary to explain why the deputies took certain actions. *State v. Anthony*, 5th Dist. Stark No. 2020CA00126, 2021-Ohio-1755, ¶ 35, *appeal not allowed,* 166 Ohio St.3d 1428, 2022-Ohio-743, 184 N.E.3d 98; *see also, State v. Stephens*, 5th Dist. Licking No. 21CA0068, 2022-Ohio-2944, ¶ 43 [extrajudicial statements by out-of-court declarant properly admissible to explain actions of witness to whom statement directed]. As demonstrated in the portions of the record cited supra, appellee did not offer Bernhart's testimony to establish the existence or validity of the warrant.

{¶32} Finally, because this case was tried to the court, we presume, unless affirmatively shown otherwise, that the court considered the testimony for proper purposes. Even if the admission of the testimony was improper, since the case was tried before a judge, it must affirmatively appear on the record that the judge relied on the alleged improper testimony. *State v. Hurst*, 5th Dist. Richland No. 2019 CA 0091, 2020-Ohio-4899, ¶ 28. We note that the trial court's Judgment Entry of July 8, 2022, in which appellant is found guilty, does not reference whether a warrant existed or not. See, *State v. Clifford*, 5th Dist. Delaware No. 19 CAA 12 0068, 2020-Ohio-5095, ¶ 24, *cause dismissed,* 163 Ohio St.3d 1426, 2021-Ohio-1733, 168 N.E.3d 512.

{¶33} Appellant's first assignment of error is overruled.

II., III.

{¶34} Appellant's second and third assignments of error are related and will be considered together. He argues his conviction upon one count of obstructing official business is not supported by sufficient evidence and is against the manifest weight of the evidence.  We disagree.

{¶35} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different.  *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, paragraph two of the syllabus. The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held, "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶36} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered."  *State v. Thompkins*, supra, 78 Ohio St.3d at 387.

Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶37} Appellant was found guilty upon one count of obstructing official business pursuant to R.C. 2921.31(A), which states: "No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties." Appellant argues that absent evidence of the existence of the warrant, he cannot be convicted of obstructing official business because he did not impede the deputies' "lawful duties."

{¶38} The offense of obstruction of official business has the following elements: "(1) an act by the defendant; (2) done with the purpose to prevent, obstruct, or delay a public official; (3) that actually hampers or impedes a public official; (4) while the official is acting in the performance of a lawful duty; and (5) the defendant does so act without a privilege to do so." *State v. Henry*, 10th Dist. No. 16AP-846, 2018-Ohio-1128, 110 N.E.3d 103, ¶ 55, citing *State v. Dice,* 3d Dist. No. 9-04-41, 2005-Ohio-2505, 2005 WL 1205336, ¶ 19; R.C. 2921.31(A). Thus, under Ohio law, "[a] conviction under R.C. 2921.31(A) requires proof of an affirmative act that hampered or impeded the performance of the lawful duties of a public official." *Id.,* citing *State v. Overholt,* 9th Dist. No. 2905–M, 1999 WL 635717 (Aug. 18, 1999). In the instant case, appellant argues the deputies were not acting in the performance of a lawful duty.

{¶39} "The proper focus in a prosecution for obstructing official business is on the defendant's conduct, verbal or physical, and its effect on the public official's ability to

perform the official's lawful duties." *Id.,* citing *State v. Wellman,* 173 Ohio App.3d 494, 2007-Ohio-2953, 879 N.E.2d 215, ¶ 12 (1st Dist.). Appellant's argument shifts the focus of the issue from his conduct, fleeing, to that of the deputies, investigating whether a warrant existed for appellant's arrest.

{¶40} The parties agree the issue posed by this case is whether the deputies were acting in the performance of a lawful duty. Appellant's Brief, 5; Appellee's Brief, 4. On the record, appellant agreed with the trial court's characterization of the encounter between appellant and the deputies: appellant drove away to stop the exercise of what he believed to be an improper act. T. 24-25. In closing, appellant reiterated he was justified in fleeing because he did not believe the actions of the deputies were authorized.

{¶41} We find there is no question the deputies were acting in performance of a lawful duty in their encounter with appellant, including investigating the warrant, and appellant's act of fleeing the scene hampered them in performing that duty.

{¶42} In *State v. Dice*, 3rd Dist. Marion No. 9-04-41, 2005-Ohio-2505, the Third District Court of Appeals examined a case in which police attempted to stop and talk to the appellant about allegations by his ex-wife as the appellant walked home from a store. The appellant ran from police and was eventually charged with obstructing official business. *Id.,* ¶ 9-10. The appellant argued he didn't act purposefully because he had no knowledge police intended to arrest him, and he therefore did not "hamper or impede the officers in the performance of their duties." *Id.,* ¶ 18.

{¶43} The Third District found that the question whether appellant would or could be arrested when police wanted to speak to him was irrelevant; appellant fled and therefore impeded official police business:

It is unclear from the record in this case whether the officers were attempting to arrest Dice before he ran from them. Officer Cox testified that at the time Simona identified Dice to the police they had probable cause to arrest. However, none of the officers indicated to Dice that he was under arrest, and no officer testified that they were attempting to place Dice under arrest at that point in time. In fact, the prosecution submitted no evidence that the officers were placing Dice under arrest at this time.

However, it is clear that the officers were in the midst of conducting official police business. Dice testified that he saw numerous police cruisers with their lights on at Mom's Used Car Lot. He testified that he saw that Mason was in custody, that he saw Simona point him out to the police officers, and that the officers were coming towards him and ordering him to stop. It is irrelevant whether or not Dice was being placed under arrest—it was clear from the facts of the case that the officers wanted Dice in connection with their arrest of Mason, which is, of course, official police business.

Thus, it is clear from the facts of the case that Dice acted with the specific intent to prevent, obstruct, or delay the officers from what was obviously an ongoing investigation, part of their official duties. This fulfills the statutory element of purposefulness. Therefore, viewed in a light most favorable to the prosecution, the evidence was

sufficient for a rational trier of fact to conclude that Dice acted with

the requisite mental state.

Moreover, it is evident that by running from the police, Dice

did hinder the officers' performance of their lawful duty and that Dice

was not privileged to do so. * * * *.

*State v. Dice*, 3rd Dist. Marion No. 9-04-41, 2005-Ohio-2505,

¶ 20-23.

{¶44} Talking to suspects and serving warrants is a routine lawful duty of police; part of that duty is determining whether a valid warrant exists. In *In re E.C.,* 5th Dist. Muskingum No. CT2012-0048, 2013-Ohio-2584, ¶ 2, police awakened the appellant from sleep, told him he was under arrest, and he immediately fled. We found sufficient evidence to find the appellant guilty of obstructing official business because "[w]hen Appellant ran, he prevented the officers from arresting him, effectively 'hamper[ing] or imped[ing] a public official in the performance of the public official's [duty.]'" *Id.,* citing R.C. 2921.31(A).

{¶45} In *State v. Willey,* 5th Dist. No. 2014CA00222, 2015-Ohio-4572, 46 N.E.3d 1121, ¶ 4, we reviewed a case in which police were dispatched to investigate an alleged fight at a party and encountered the appellant on a front porch; as police attempted to investigate, the appellant refused to answer questions and yelled at other witnesses on the scene, instructing them not to answer questions. *Id.* We found that the "official business" impeded by the appellant was the officers' investigation:

The officers' "official business" was to investigate the

allegations * * * . When appellant refused to provide information and

prevented [another witness] from providing any, the focus shifted to appellant. Her obstreperous behavior constituted an "act" within the meaning of the statute. "[Her] persistence in disregarding [the officers'] orders was sufficient evidence from which a rational trier of fact could conclude that [she] acted with the specific intent to prevent, obstruct, or delay [the officers] in [their] lawful duties." *State v. Shepherd,* 5th Dist. Richland No. 14CA63, 2015-Ohio-4330, 2015 WL 5917918, at ¶ 30; see also, *State v. Friedman,* 5th Dist. Stark No. 2013CA00150, 2013-Ohio-4669, 2013 WL 5753770, ¶ 24; *State v. Brooks,* 5th Dist. Knox No. 06CA000024, 2007-Ohio-4025, 2007 WL 2269414, ¶ 13.

> *State v. Willey*, 5th Dist. No. 2014CA00222, 2015-Ohio-4572, 46 N.E.3d 1121, ¶ 22

{¶46} In the instant case, therefore, the "lawful duty" of the deputies was the investigation; whether a warrant existed, and appellant's "belief" regarding its existence, are irrelevant. In fleeing, appellant hampered or impeded the deputies in their investigation.

{¶47} It is well-established that running from deputies "[does] hinder the officers' performance of their lawful duty * * *." *State v. Friedman*, 5th Dist. Stark No. 2013CA00150, 2013-Ohio-4669, ¶ 22, citing *Dice,* supra, 3rd Dist. Marion No. 9–04–41, 2005–Ohio–2505, ¶ 23; *State v. Davis*, 140 Ohio App.3d 751, 753, 749 N.E.2d 322 (1st Dist.2000) [appellant realized officers sought to detain him and he continued to walk away]; *State v. Harris,* 10th Dist. No. 05AP–27, 2005–Ohio–4553, at ¶ 16 ('[W]e hold that

fleeing from a police officer who is lawfully attempting to detain the suspect under the authority of *Terry,* is an affirmative act that hinders or impedes the officer in the performance of the officer's duties as a public official and is a violation of R.C. 2921.31, obstructing official business.').

{¶48} We find appellant's conviction is not against the sufficiency or the manifest weight of the evidence. To the contrary, the judge appears to have fairly and impartially decided the matters before him. The judge as a trier of fact can reach different conclusions concerning the credibility of the testimony of appellee's witnesses and appellant's arguments. This court will not disturb the trier of fact's finding so long as competent evidence was present to support it. *State v. Walker,* 55 Ohio St.2d 208, 378 N.E.2d 1049 (1978). The judge heard the witnesses, evaluated the evidence, and was convinced of appellant's guilt.

{¶49} Finally, upon careful consideration of the record in its entirety, we find that there is substantial evidence presented which if believed, proves all the elements of the crime of obstructing official business for which appellant was convicted.

**CONCLUSION**

{¶50} Appellant's three assignments of error are overruled and the judgment of the Holmes County Municipal Court is affirmed.


By: Delaney, J.,

Hoffman, P.J. and

Baldwin, J., concur.