[Cite as *State v. Brown*, 2023-Ohio-3906.]


COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT


STATE OF OHIO

     Plaintiff-Appellee

-vs-

DANNY L. BROWN

     Defendant-Appellant

JUDGES:
Hon. William B. Hoffman, P.J.
Hon. John W. Wise, J.
Hon. Craig R. Baldwin, J.

Case No. 2022 CA 0042


O P I N I O N


CHARACTER OF PROCEEDING:     Criminal Appeal from the Court of Common Pleas, Case No. 2020 CR 0812


JUDGMENT:     Affirmed


DATE OF JUDGMENT ENTRY:     October 26, 2023


APPEARANCES:

For Plaintiff-Appellee

FORREST THOMPSON
PROSECUTING ATTORNEY
VICTOR V. VIGLUICCI
ASSISTANT PROSECUTOR
60 Public Square
Medina, Ohio 44256

For Defendant-Appellant

CHARLES A. KOENIG
4669 North High Street
Suite D
Columbus, Ohio 43214

*Wise, J.*

{¶1}    Appellant Danny Brown appeals his convictions on Aggravated Trafficking in Drugs, Trafficking in Cocaine, Aggravated Possession of Drugs, and Possession of Cocaine, entered in the Richland County Common Pleas Court, following a jury trial.

{¶2}    Appellee is the state of Ohio.

STATEMENT OF THE FACTS AND CASE

{¶3}    For purposes of this Opinion, the relevant facts and procedural history are as follows:

{¶4}    On February 22, 2021, the Richland County Grand Jury indicted Appellant Danny L. Brown as follows: Count One, Having Weapons While Under Disability, a violation of R.C. §2923.13(A)(3)(B), a felony of the third degree, with a forfeiture specification for a weapon; Count Two, Receiving Stolen Property, a violation of R.C. §2913.51(A)(C), a felony of the fifth degree; Count Three, Aggravated Possession of Drugs, a violation of R.C. § 2925.11(A)(C)(1)(c), a felony of the second degree, with a forfeiture specification for money; Count Four, Possession of Cocaine, a violation of R.C. § 2925.11(A)(C)(4)(e), a felony of the first degree, with a forfeiture specification for money; Count Five, Trafficking in Cocaine, a violation of R.C. § 2925.03(A)(2), a felony of the first degree, with a forfeiture specification for money; and Count Six, Aggravated Trafficking in Drugs, a violation of R.C. § 2925.03(A)(2), a felony of the second degree, with a forfeiture specification for money.

{¶5}    On July 26, 2021, Appellant filed a motion to suppress evidence.

{¶6}    On September 22, 2021, after a hearing, the trial court denied Appellant's motion to suppress.

**{¶7}** The matter proceeded to a jury trial on April 15, 19, 20, and 21, 2022. At trial, the jury heard the following testimony:

**{¶8}** Joshua Dawson testified that he is a detective with the Richland County Sheriff's Office and that on November 26, 2020, he received a call from his captain informing him that a house owned by Matt and Mandy Metcalf, which was under construction and located at 3000 Frank Road, had been broken into on two consecutive nights. (Tr. at 26-28). The first night there were some lighting and plumbing fixtures stolen, and on the second night there were 21 boxes of vinyl siding, wall trim, more lighting fixtures, more plumbing fixtures, a ceiling fan, and a chandelier stolen. (Tr. at 27).

**{¶9}** Following the first instance of breaking and entering at the residence, the Metcalfs set up trail cameras on the property. (Tr. at 28). When the suspects went back the second time, they also stole the trail cameras. However, one camera was able to transmit an image of a tan Mercury Grand Marquis, and the police were able to get a license plate from that image. (Tr. at 28). The license plate came back to a Paul Kelly, who has two sons, Josh and Jarrod Kelly. (Tr. at 28). This was significant because there had been another B&E of a business in Mansfield where the Kelly brothers had stolen diesel engines and mechanical parts and then scrapped them. (Tr. at 28). Arrest warrants were issued for both Kelly brothers and Josh Kelly's girlfriend, Miranda Williams. (Tr. at 29). While in jail and after her interview with police, Miranda Williams flagged down Detective Dawson and told him that she wanted to give him more information. (Tr. at 30-31).

**{¶10}** Ms. Williams told Detective Dawson that the stolen property could be found at a house on Diamond Street and at a house on Grace Street, both of which belonged

to their drug dealer named "D." (Tr. at 31). Detective Dawson spoke with Deputy Scarberry and mentioned the name "D" to her. (Tr. at 32). Deputy Scarberry told Detective Dawson that there was a person named Danny Brown who went by "D," who lived on Grace Street, and who was also associated with the Kellys. (Tr. at 32). Deputy Scarberry informed Detective Dawson that another theft case she was working involved the stealing and scrapping of material, and in that case the Kellys had used a vehicle owned by Danny Brown. (Tr. at 32).

{¶11} On November 30, 2020, a search warrant to look for stolen property and drugs at 296 Grace Street and two of Brown's other properties was executed. (Tr. at 32-33). At the time the search warrant was executed, Brown's wife was in the house and Brown was located in a vehicle out front. (Tr. at 33). At Brown's Diamond Street property, which was vacant, police found 21 boxes of vinyl siding, some wall trim, and interior doors. (Tr. at 35). At 296 Grace Street police found more bundles of trim, boxes of flooring, a chandelier, a ceiling fan, light fixtures, and plumbing fixtures. (Tr. at 36). Many of the fixtures were still in boxes that had shipping labels addressed to Mandy Metcalf. (Tr. at 36). Paul, Jarrod, and Josh Kelly were charged with the break-ins and were subsequently convicted. (Tr. at 43).

{¶12} Evan Williams testified that he is a trooper with the Ohio State Highway Patrol and that from 2018 to 2020, he was assigned to the Richland County METRICH Drug Enforcement Unit. (Tr. at 77-78). On November 30, 2020, Trooper Williams was part of the search team that executed a search warrant at 296 Grace Street in Richland County, Ohio. (Tr. at 79). Trooper Williams was searching for any kind of drugs or stolen property, and during the investigation he searched the master bedroom. (Tr. at 80). In the

northeast corner nightstand, Trooper Williams found a Smith & Wesson 40 caliber gun and a plastic baggie that contained suspected crack cocaine and pills. (Tr. at 81, 84, 90).

**{¶13}** Wayne Liggett testified that he is a detective with the Richland County Sheriff's Office and the METRICH Enforcement Unit and that on November 30, 2020, he was involved in the execution of a search warrant at 296 Grace Street, Mansfield, Ohio. (Tr. at 101-03). Agencies involved included the METRICH Enforcement Unit, the Richland County Sheriff's Office, the Mansfield Police Department, and the ATF. (Tr. at 103). On November 30, 2020, Detective Dawson contacted Detective Liggett and asked if Detective Liggett could assist with his current investigation. (Tr. at 103). He explained that a Miranda Williams had told Detective Dawson about a burglary, and that there was some stolen property at a couple of locations on Grace and South Diamond Streets. (Tr. at 103).

**{¶14}** Detective Liggett re-interviewed Ms. Williams at the Richland County Jail, at which time Detective Liggett showed Ms. Williams pictures, and she identified "D" as Danny Brown. (Tr. at 104). Detective Liggett requested search warrants for 296 and 294 Grace Street to search for stolen property, drug paraphernalia, contraband for drug-related offenses, evidence of trafficking drugs, and firearms. (Tr. at 105). Throughout the search of 296 Grace Street, Detective Liggett was in different locations but primarily upstairs. (Tr. at 106). During the search, Detective Evan Williams opened up a drawer in the larger bedroom and found suspected crack cocaine, two different sets of pills, a firearm, and a wallet that was determined to be Danny Brown's. (Tr. at 108-09). Also, during the search, Detective Masi told Detective Liggett that when he opened up a cupboard above the toilet in the bathroom, he found a large amount of cash. (Tr. at 110). Detective Liggett photographed and bagged the cash. (Tr. at 110).

**{¶15}** Detective Liggett spoke with Danny Brown during the search of 296 Grace Street. (Tr. at 115-16). Brown stated that just he lived at 296 Grace Street. (Tr. at 116). When Detective Liggett asked about the firearm, Brown admitted that it belonged to him. (Tr. at 116). Detective Liggett identified State's Exhibit 35 as an Ohio Edison bill addressed to Danny Brown at 296 Grace Street, which was found during the search of 296 Grace Street. (Tr. at 118).

**{¶16}** Jerry Botdorf testified that he is a forensic science investigator with the Mansfield Crime Lab, and that he test-fired State's Exhibit 36, Brown's Smith & Wesson 40 and found it to be operable. (Tr. at 154, 156-59).

**{¶17}** Tony Tambasco testified that he is the laboratory director and a forensic scientist with the Mansfield Police Department Forensic Science Laboratory where his primary responsibility is as a controlled substance analyst. (Tr. at 160). Mr. Tambasco identified State's Exhibit 43 as a laboratory report that he generated. (Tr. at 165-66). Mr. Tambasco tested the two bags (State's Exhibit 32) found in Brown's residence, one containing 353 tablets and the other containing 503 tablets. (Tr. at 168). The 353 tablets, which weighed 39.44 grams, were found to contain Oxycodone, a Schedule II controlled substance. (Tr. at 171). The 503 tablets, which weighed 57.37 grams, were also found to contain Oxycodone, a Schedule II controlled substance. (Tr. at 171-72). The two bags contained more than five times the bulk amount of Oxycodone. (Tr. at 172). State's Exhibit 33 was an off-white or white substance in three plastic bags. (Tr. at 173). This white substance, which weighed 81.46 grams, was found to contain cocaine, a Schedule II controlled substance. (Tr. at 175).

**{¶18}** Dawn Fryback testified that she is a DNA analyst with the crime laboratory of the Mansfield Police Department. (Tr. at 177-78). Ms. Fryback tested four different items for this case. (Tr. at 189). She collected various swabs from plastic packaging that was on the controlled substances. (Tr. at 190). She also did DNA testing on some gun swabs, as well as a reference sample that was collected from Danny Brown. (Tr. at 190). Ms. Fryback found Danny Brown's major DNA profile on one of the pill bags and on the Smith & Wesson 40 handgun. (Tr. at 199-200, 203-04).

**{¶19}** Perry Wheeler testified that he is a detective with the Mansfield Police Department and currently assigned to the Richland County METRICH office. (Tr. at 221). Detective Wheeler was involved in a search warrant at 296 Grace Street on November 30, 2020. (Tr. at 222). Detective Wheeler was not part of the search team, but he was present at the scene and documented what was found. (Tr. at 222). A wallet with a driver's license for Danny Brown, credit cards for Danny Brown, and an Ohio Edison bill addressed to Danny Brown at 296 Grace Street were all found at the residence identifying 296 Grace Street as Danny Brown's residence. (Tr. at 225).

**{¶20}** Detective Wheeler identified baggies with the suspected cocaine which were recovered from 296 Grace Street. (Tr. at 226). Based on his training and experience, Detective Wheeler noted that these narcotics were packaged for sale and not for use, as users never have that much product. (Tr. at 227). Detective Wheeler identified the 856 brown, round 30 milligram Percocet pills which were recovered from the upstairs bedroom. (Tr. at 228-29). Detective Wheeler noted that these pills are generally sold one at a time or maybe in quantities of 5, 10, or 15. (Tr. at 229). Detective Wheeler estimated

that at the low end these would probably sell for around $55 per pill, which comes out to around $50,000 when multiplied by 856 pills. (Tr. at 229- 30).

**{¶21}** There was also $14,669.00 in cash located during the search, which Detective Wheeler counted. (Tr. at 230). Detective Wheeler explained that based on his training and experience, lower denominations of money are indicative of drug trafficking. (Tr. at 231-32). Drug dealers will then launder the money by going to the bank and exchanging the twenties, tens, and fives for fifties and hundreds. (Tr. at 232). Detective Wheeler noted that Brown's cash included a significant amount of twenty-dollar bills. (Tr. at 232). Detective Wheeler noted that it is common for drug dealers to have large amounts of drugs, large amounts of cash, and firearms in the same place as Brown did because they need to protect their drugs and money and cannot call the police if something goes wrong. (Tr. at 232-233).

**{¶22}** The Richland County Sheriff's Office search warrant related to stolen property which was also located. (Tr. at 233-34). Detective Wheeler noted that in many instances when drug users don't have money, they trade property for drugs instead. (Tr. at 234). Detective Wheeler noted that drug dealers will even give drug users a shopping list and the drug users will go and steal those items, bring them back, and trade them for drugs. (Tr. at 234).

**{¶23}** Matt Metcalf testified that he is a prosecuting attorney with the Richland County Prosecutor's Office. (Tr. at 267-68). Mr. Metcalf was having a new house built on Frank Road in Richland County in November of 2020. (Tr. at 268-69). On November 25, 2020, Mr. Metcalf learned that there had been a break-in at the construction site of the house. (Tr. at 269). All of the vinyl siding that was supposed to go on the house was

stolen and some lighting and plumbing fixtures were stolen as well. (Tr. at 269-270). Some of the things that were stolen were located outside the house and some were inside the garage. (Tr. at 271). The garage's unfinished man door was kicked in or pushed through to gain entry. (Tr. at 271). Mr. Metcalf stated that he did not give anybody permission to take the items that were stolen. (Tr. at 275).

{¶24} Mr. Metcalf also testified as to the second break-in at the construction site which occurred on Thanksgiving Day, sometime between 11:00 a.m. and 4:00 p.m. (Tr. at 277). The man door that had been kicked in the first time now had a 2x4 across it, but it also had a window in it. (Tr. at 277). This time they broke out the window to get in. (Tr. at 277). They damaged the other doors as well by trying to pry them open. (Tr. at 277). A trail camera was stolen. (Tr. at 277). When Mr. Metcalf got inside the property, he saw that the thieves stole even more items. (Tr. at 278). They also stole a second trail camera, a lot of trim/baseboards, lights, fans, and a chandelier. (Tr. at 278). One of the trail cameras was able to pick up the license plate of the vehicle used during the break-in, and that was given to the Sheriff's Office. (Tr. at 278). The perpetrators were arrested shortly thereafter, and Mr. Metcalf was able to collect his stolen items shortly after that. (Tr. at 279). The Sheriff's Office contacted Mr. Metcalf and told him they had recovered his stolen property on November 30, 2020. (Tr. at 279). Mr. Metcalf then contacted his builder and contacted a friend of his who had a trailer to go and pick up the stolen items. (Tr. at 280). When Mr. Metcalf arrived at Danny Brown's Grace Street house, he immediately noticed his trim on Brown's porch. (Tr. at 280). In Danny Brown's basement there were two piles of items that had been taken from Mr. Metcalf's house. (Tr. at 281). Mr. Metcalf's chandelier was in Danny Brown's basement, and it still had the shipping label on it to his

Lexington address, along with his wife's name on it. (Tr. at 281). Mr. Metcalf then went to a second address on Diamond Street, Richland County, Ohio. (Tr. at 281-82). All of Mr. Metcalf's siding was at that address in the basement. (Tr. at 282). A number of Mr. Metcalf's doors were in the Diamond Street house's rooms. (Tr. at 282). It appeared that they were in the process of hanging Mr. Metcalf's doors in Danny Brown's house. (Tr. at 282). Mr. Metcalf identified State's Exhibit 12 as a photograph showing several more items found in Danny Brown's Grace Street basement that were stolen from his house, including flooring, a fan, island lights, and a shower head. (Tr. at 287-88). Mr. Metcalf identified State's Exhibits 14, 15, and 16 as lighting and plumbing fixtures stolen from his house and found at the Grace Street address. (Tr. at 288). The trim that was recovered was damaged, and they had to have much of it replaced. (Tr. at 289). The siding recovered from the Diamond Street address was ruined, and they had to replace all of it. (Tr. at 289). They were able to salvage much of what was in the boxes. (Tr. at 289). The siding that was stolen was valued at $4,024.72, the stolen trim was worth $3,822.00, and the stolen chandelier was valued at over $1,000.00. (Tr. at 289). All together, the stolen property was worth around $8,000.00. (Tr. at 291). Mr. Metcalf identified State's Exhibits 37, 38, and 39 as invoices documenting these amounts. (Tr. at 289-91).

{¶25} Following deliberations, the jury found Appellant not guilty on Count Two, Receiving Stolen Property, and not guilty on the forfeiture specifications to Counts Three, Four, Five, and Six. The jury found Appellant guilty on Count One, Having Weapons While Under Disability, a felony of the third degree, and guilty on its forfeiture specification; guilty on Count Three, Aggravated Possession of Drugs, a felony of the second degree; guilty on Count Four, Possession of Cocaine, a felony of the first degree; guilty on Count Five,

Trafficking in Cocaine, a felony of the first degree; and guilty on Count Six, Aggravated Trafficking in Drugs, a felony of the second degree.

{¶26} On May 19, 2022, a sentencing hearing was held wherein the trial court merged Count Three into Count Six and merged Count Four into Count Five, and then sentenced Appellant as follows: Count One: thirty-six (36) months in prison; Count Five: a minimum of eleven (11) years in prison and a maximum of sixteen and a half (16 ½) years in prison; Count Six: eight (8) years in prison. The trial court ordered these sentences to be served consecutively to each other, for a total aggregate minimum term of 22 years and an aggregate maximum term of 27 ½ years.

{¶27} Appellant now appeals, raising the following errors for review:

ASSIGNMENTS OF ERROR

{¶28} "I. THE TRIAL COURT ABUSED ITS DISCRETION BY [sic] APPELLANT THE RIGHT TO PRESENT EVIDENCE, THEREBY DENYING APPELLANT A MEANINGFUL OPPORTUNITY TO PRESENT A COMPLETE DEFENSE, IN VIOLATION OF APPELLANT'S CONSTITUTIONAL RIGHTS TO DUE PROCESS UNDER THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 10 AND 16, ARTICLE I OF THE OHIO CONSTITUTION.

{¶29} "II. THE COURT ABUSED ITS DISCRETION BY FAILING TO SUPPRESS THE EVIDENCE SEIZED DURING AN ILLEGAL SEARCH, IN VIOLATION OF APPELLANT'S CONSTITUTIONAL RIGHTS UNDER THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND SECTION 14, ARTICLE I OF THE OHIO CONSTITUTION.

**{¶30}** "III. APPELLANT'S CONVICTIONS FOR TRAFFICKING IN DRUGS AND TRAFFICKING IN COCAINE, AND FOR POSSESSION AND TRAFFICKING OF BULK AMOUNTS, WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE AND WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, IN VIOLATION OF APPELLANT'S CONSTITUTIONAL RIGHTS TO DUE PROCESS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION.

**{¶31}** "IV. APPELLANT WAS DEPRIVED OF HIS CONSTITUTIONAL RIGHTS TO DUE PROCESS IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION, AS A CONSEQUENCE OF INEFFECTIVE ASSISTANCE OF COUNSEL."

**I.**

**{¶32}** In his first assignment of error, Appellant argues that the trial court erred by denying him the right to present evidence. We disagree.

**{¶33}** More specifically, Appellant argues that he was denied the opportunity to present evidence concerning an unrelated case he was charged in twenty years prior in a case referred to "Operation Turnaround", also brought by the METRICH Enforcement Unit, where fabricated evidence was arguably used against him.

**{¶34}** Every criminal defendant has a constitutional right to present a meaningful defense. *Crane v. Kentucky* (1986), 476 U.S. 683, 690, 106 S.Ct. 2142. However, this right does not engender an unfettered entitlement to the admission of any and all evidence. *U.S. v. Scheffer* (1998), 523 U.S. 303, 308, 118 S.Ct. 1261.

**{¶35}** "Ordinarily, a trial court is vested with broad discretion in determining the admissibility of evidence in any particular case, so long as such discretion is exercised in line with the rules of procedure and evidence." *State v. Romy*, 5th Dist., 2021-Ohio-501, 168 N.E.3d 86, ¶ 49 (Citation omitted). The appellate court must limit its review of the trial court's admission or exclusion of evidence to whether the trial court abused its discretion. *Id.* The abuse of discretion standard is more than an error of judgment; it implies the court ruled arbitrarily, unreasonably, or unconscionably. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983). "When applying the abuse-of-discretion standard, a reviewing court must not substitute its judgment for that of the trial court." *In re E.L.C.*, 12th Dist. Butler No. CA2014-09-177, 2015-Ohio-2220, ¶ 16.

**{¶36}** A trial court must determine if potential evidence is relevant. Evid.R. 401 defines "relevant" evidence. To be relevant, evidence must have a "tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." Evid.R. 401. In other words, there must be some probative value to the evidence. Generally, relevant evidence is admissible. Evid.R. 402. Evidence which is not relevant is not admissible. Evid.R. 402.

**{¶37}** "Under Evid.R. 403(A), '[a]lthough relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.' " *State v. Velez*, 3d Dist. Putnam No. 12-13-10, 2014-Ohio-1788, 2014 WL 1692753, ¶ 122, quoting *State v. Maag*, 3d Dist. Hancock Nos. 5–03–32 and 5-03-33, 2005-Ohio-3761, 2005 WL 1712898, ¶ 71.

**{¶38}** Upon review, we find that any claims in regard to fabricated evidence in a case brought twenty years ago were not relevant as to the instant case. We find no

connections between the two cases other than that Appellant was the person charged in both cases and both cases were investigated by the METRICH Enforcement Unit. The only other possible similarity between the two cases is that the victim in this case, Matt Metcalf, is the son of Charles Metcalf, one of the individuals prosecuted in relation to Operation Turnaround. We therefore find that any evidence presented regarding what transpired in an unrelated, twenty-year old case was not relevant and would have been more prejudicial than probative in this matter, with the likelihood of causing confusion or misleading the jurors.

**{¶39}** Appellant's first assignment of error is overruled.

**II.**

**{¶40}** In his second assignment of error, Appellant argues that the trial court erred in denying his motion to suppress evidence. We disagree.

**{¶41}** Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside,* 100 Ohio St.3d 152, 154–155, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate witness credibility. See *State v. Dunlap,* 73 Ohio St.3d 308, 314, 652 N.E.2d 988 (1995); *State v. Fanning,* 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). Accordingly, a reviewing court must defer to the trial court's factual findings if competent, credible evidence exists to support those findings. See *Burnside,* supra; *Dunlap,* supra; *State v. Long,* 127 Ohio App.3d 328, 332, 713 N.E.2d 1 (4th Dist.1998); *State v. Medcalf,* 111 Ohio App.3d 142, 675 N.E.2d 1268 (4th Dist.1996). However, once this Court has accepted those facts as true, it must independently determine as a matter of law whether the trial court met the applicable legal

standard. See *Burnside,* supra, citing *State v. McNamara,* 124 Ohio App.3d 706, 707 N.E.2d 539 (4th Dist.1997); See, generally, *United States v. Arvizu,* 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002); *Ornelas v. United States,* 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). That is, the application of the law to the trial court's findings of fact is subject to a *de novo* standard of review. *Ornelas, supra.* Moreover, due weight should be given "to inferences drawn from those facts by resident judges and local law enforcement officers." *Ornelas,* supra at 698, 116 S.Ct. at 1663.

{¶42} The Fourth Amendment to the United States Constitution states: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

{¶43} In determining the sufficiency of probable cause in an affidavit submitted for a search warrant, a trial judge or magistrate must make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *State v. George*, 45 Ohio St.3d 325, 544 N.E.2d 640 (1989), at paragraph one of the syllabus (1980), *citing Illinois v. Gates*, 462 U.S. 213, 238–239, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). As a reviewing court, we must accord great deference to the issuing judge's determination of probable cause. *See George*, at paragraph two of the syllabus. Doubtful or marginal cases should be resolved in favor of upholding the warrant. *Id.* The totality of the circumstances must be examined in determining whether probable cause existed for

a search warrant. *Illinois v. Gates, supra.* "Probable cause" means only the probability and not a *prima facie* showing of criminal activity. *George, supra*, at 644. *See, also, Beck v. Ohio*, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964).

**{¶44}** Appellant herein argues that there was a lack of probable cause for the search warrant, and that the search warrant affidavit contained false information. Other than such assertions, Appellant presents no evidence in support of his allegations of falsity.

**{¶45}** Paragraphs 3, 4 and 8 of the Affidavit contain information obtained by the METRICH Enforcement Unit from a confidential source and a concerned citizen stating that Appellant was selling cocaine and Percocet tables, and that said drugs had been purchased at 296 Grace Street. The concerned citizen also stated that Appellant had allowed individuals to use his truck in the commission of a breaking and entering at 3000 Frank Road. The concerned citizen further stated that the stolen property was taken to Appellant at 296 Grace Street and exchanged for cocaine and Percocet.

**{¶46}** Additionally, Paragraph 9 stated that METRICH conducted surveillance at 296 Grace Street, and a Chevy Silverado truck registered to Appellant was parked there in the back yard. The remaining paragraphs contained background information and history concerning Appellant.

**{¶47}** Under a totality of the circumstances, the affidavit contained sufficient information for the issuing judge to find there was probable cause to issue a search warrant.

**{¶48}** Appellant's second assignment of error is overruled.

**III.**

**{¶49}** In his third assignment of error, Appellant argues that his convictions were against the manifest weight and sufficiency of the evidence.

**{¶50}** Sufficiency of the evidence and manifest weight of the evidence are separate and distinct legal standards. *State v. Thompkins,* 78 Ohio St.3d 380, 386–87, 678 N.E.2d 541 (1997). Sufficiency is a test of adequacy. *Id.* A sufficiency of the evidence standard requires the appellate court to examine the evidence admitted at trial, in the light most favorable to the prosecution, to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 259, 574 N.E.2d 492, 494, syllabus, paragraph 2.

**{¶51}** In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541, 547 (1997) quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720–721 Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction*." Id. See State v. Acker*, 5th Dist. Holmes No. 22CA008, 2023-Ohio-2085, ⁋ 36.

**{¶52}** Appellant herein is challenging his convictions for Aggravated Trafficking in Drugs and Trafficking in Cocaine, in violation of R.C. §2925.03(A)(2) and Aggravated

Possession of Drugs and Possession of Cocaine, in violation of R.C. §2925.11(A)(C)(1)(c) and (A)(C)(4)(c), which provide, in relevant part:

### R.C. §2925.03 TRAFFICKING OFFENSES

(A) No person shall knowingly do any of the following:

(1) ***

(2) Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog, when the offender knows or has reasonable cause to believe that the controlled substance or a controlled substance analog is intended for sale or resale by the offender or another person.

### R.C. §2925.11 DRUG POSSESSION OFFENSES

(A) No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog.

(C) Whoever violates division (A) of this section is guilty of one of the following:

(1) If the drug involved in the violation is a compound, mixture, preparation, or substance included in schedule I or II, with the exception of marihuana, cocaine, L.S.D., heroin, any fentanyl-related compound, hashish, and any controlled substance analog, whoever violates division (A) of this section is guilty of aggravated possession of drugs. The penalty for the offense shall be determined as follows:

****

(c) If the amount of the drug involved equals or exceeds five times the bulk amount but is less than fifty times the bulk amount, aggravated possession of drugs is a felony of the second degree, and the court shall impose as a mandatory prison term a second-degree felony mandatory prison term.

\*\*\*\*

(4) If the drug involved in the violation is cocaine or a compound, mixture, preparation, or substance containing cocaine, whoever violates division (A) of this section is guilty of possession of cocaine. The penalty for the offense shall be determined as follows:

\*\*\*\*

(c) If the amount of the drug involved equals or exceeds ten grams but is less than twenty grams of cocaine, possession of cocaine is a felony of the third degree, and, except as otherwise provided in this division, there is a presumption for a prison term for the offense. If possession of cocaine is a felony of the third degree under this division and if the offender two or more times previously has been convicted of or pleaded guilty to a felony drug abuse offense, the court shall impose as a mandatory prison term one of the prison terms prescribed for a felony of the third degree.

*Trafficking offenses*

**{¶53}** Appellant herein argues that the state failed to prove that he was engaged in trafficking, offering insufficient evidence that he engaged in conduct to "prepare for

shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance."

**{¶54}** Upon review, we find that at trial, the jury heard testimony from both Detective Wheeler Boyer and Tom Tambasco, among others. Det. Wheeler testified that 856 30-milligram Percocet Pills and 81.36 grams of cocaine were found in Appellant's nightstand. A handgun was also found in the nightstand and almost $15,000 cash, largely in $20 bills, was found in a cabinet. Det. Wheeler testified that in his training and experience, the cocaine and the pills were packaged for sale and that users never have that product for personal use and that dealers often have lower denominations of cash. He testified that it is common for drug dealers to have large amounts of drugs, cash and weapons, all in the same place. Conversely, drug users usually only have drugs or money, not both.

*Possession - Bulk Amount*

**{¶55}** Appellant also argues that the evidence was insufficient to prove that the quantity of the drugs in his possession exceeded five times the bulk amount but was less than fifty times the bulk amount.

**{¶56}** Oxycodone is a Schedule II controlled substance. R.C. §3719.41(A)(1)(n).

**{¶57}** A "bulk amount" of oxycodone is "[a]n amount equal to or exceeding twenty grams or five times the maximum daily dose * * * specified in a standard pharmaceutical reference manual * * *." R.C. §2925.01(D)(1)(d).

**{¶58}** The state may prove the maximum daily dose in the usual dose range in one of three ways: "(1) by stipulation, (2) by expert testimony as to what a standard pharmaceutical reference manual prescribes, or (3) by a properly proven copy of the

manual itself." *State v. Montgomery*, 17 Ohio App.3d 258, 260, 479 N.E.2d 904 (1st Dist.1984); *but see State v. Caldwell*, 5th Dist. Richland No. CA–2369, 1986 WL 7456, *3 (June 23, 1986) (approving judicial notice of bulk amount stated in a standard pharmaceutical reference manual). *State v. Pountney*, 152 Ohio St.3d 474, 2018-Ohio-22, 97 N.E.3d 478

**{¶59}** The state contends that it established the bulk amount of transdermal fentanyl through Forensic scientist Tom Tambasco's expert testimony

**{¶60}** Mr. Tambasco testified that "the standard pharmaceutical manual prescribes no more than a maximum daily dose of three 30-milligram pills or 90 milligrams, and therefore five times that amount, or 15 pills (450 milligrams), is bulk. (T. at 172). No objection was raised to this testimony.

**{¶61}** During deliberations the jury asked for further instruction as to bulk amount, and the parties agreed to the court's instruction.

**{¶62}** The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. Jamison,* 49 Ohio St.3d 182, 552 N.E.2d 180 (1990). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger,* 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997). We note circumstantial evidence is that which can be "inferred from reasonably and justifiably connected facts." *State v. Fairbanks,* 32 Ohio St.2d 34, 289 N.E.2d 352 (1972), paragraph five of the syllabus. "[C]ircumstantial evidence may be more certain, satisfying and persuasive than direct evidence." *State v. Richey,* 64 Ohio St.3d 353, 1992-Ohio-44, 595

N.E.2d 915. It is to be given the same weight and deference as direct evidence. *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991).

**{¶63}** Accordingly, based on the drugs, money and firearm found in the house which is owned by Appellant, together with the large amount of the drugs packaged for individual use, and Appellant's DNA found on the baggies, we find Appellant's convictions for trafficking and possession are supported by sufficient evidence and are not otherwise against the manifest weight of the evidence.

**{¶64}** Appellant's third assignment of error is overruled.

**IV.**

**{¶65}** In his fourth assignment of error, Appellant argues that his trial counsel was ineffective. We disagree.

**{¶66}** To obtain a reversal of a conviction on the basis of ineffective assistance of counsel, the defendant must prove (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome of the proceeding. *Strickland v. Washington*, 466 U.S. 668, 687–688, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693(1984). A defendant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other. *Strickland* at 697, 104 S.Ct. at 2069, 80 L.Ed.2d at 699; *State v. Madrigal*, 87 Ohio St.3d 378, 2000-Ohio-448, 721 N.E.2d 52 (2000).

**{¶67}** Appellant argues that his trial counsel was ineffective by failing to interview Miranda Williams and for not calling her as a witness at the suppression hearing.

**{¶68}** As stated by Appellee in their brief, the record is silent as to whether trial counsel interviewed Ms. Williams. Appellate review is strictly limited to the record. *The*

*Warder, Bushnell & Glessner Co. v. Jacobs*, 58 Ohio St. 77, 50 N.E. 97 (1898). An appellate court addressing a direct appeal is not permitted to add matter to the record which was not part of the trial court proceedings. *See, e.g., State v. Hill,* 90 Ohio St.3d 571, 573, 740 N.E.2d 282, 2001-Ohio-20, *citing State v. Ishmail* (1978), 54 Ohio St.2d 402, 377 N.E.2d 500.

{¶69} As to the issue of not calling Ms. Williams as a witness at the suppression hearing, based on her original statements to law enforcement about Appellant, sound trial tactics may have supported the decision to not call her. Trial tactics do not generally constitute ineffective assistance of counsel. *See, State v. Brown,* 38 Ohio St.3d 305, 319, 528 N.E.2d 523 (1988). It is generally presumed that the tactical decision of calling or refusing to call witnesses will not sustain a claim of ineffective assistance of counsel. *State v. Coulter* (1992), 75 Ohio App.3d 219, 230, 598 N.E.2d 1324; *State v. Williams* (1991), 74 Ohio App.3d 686, 695, 600 N.E.2d 298.; *State v. Johnson*, 5th Dist. Delaware No. 12 CAA 11 0081, 2014-Ohio-657, ¶ 38.

{¶70} Moreover, we will not find counsel was ineffective based upon speculation; even if Ms. Williams had been called to testify at the suppression hearing there is no reason to believe that her testimony would have differed from the statements she made to law enforcement, or that the outcome of the trial would have been different.

{¶71} Appellant has shown neither that trial counsel was incompetent nor that he suffered actual prejudice

**{¶72}** Appellant's fourth assignment of error is overruled.

**{¶73}** The judgment of the Court of Common Pleas, Richland County, Ohio, is affirmed.

By: Wise, J.

Hoffman, P. J., and

Baldwin, J., concur.

JWW/kw 1023