[Cite as *State v. Harris*, 2025-Ohio-825.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | Case No. 23CA6 |
| Plaintiff-Appellee, | : | |
| | : | |
| v. | : | <u>DECISION AND JUDGMENT</u> |
| | : | <u>ENTRY</u> |
| CHRISTOPHER HARRIS, | : | |
| | : | |
| Defendant-Appellant. | : | **RELEASED: 03/06/2025** |

<u>APPEARANCES:</u>

Jeffery C. Marks, Ross County Prosecuting Attorney, Chillicothe, Ohio, for appellee.

Peter Galyardt, Assistant Public Defender, Columbus, Ohio, for appellant.

Wilkin, J.

**{¶1}** This is an appeal of a Ross County Court of Common Pleas judgment entry that found appellant, Christopher Harris ("Harris"), guilty of driving while under the influence of alcohol and/or drugs in violation of R.C. 4511.19(A)(1)(a) ("OVI"), with three or more priors in the past ten years, making it a fourth-degree felony.

**{¶2}** In his sole assignment of error, Harris asserts that his trial counsel was ineffective because he failed to call a witness to testify at his suppression hearing. After reviewing the record, the parties' arguments, and the applicable law, we find that Harris has failed to establish that his trial counsel was ineffective for not calling that witness. Therefore, we affirm his conviction.

FACTS AND PROCEDURAL BACKGROUND

{¶3} At approximately 5:10 p.m. on December 28, 2020, a 9-1-1 call was received reporting an auto accident on Rozelle Creek Road in Ross County, Ohio. Ohio State Highway Patrol Trooper, Ryan Miller, was dispatched to investigate the accident. When Trooper Miller arrived at the scene, he observed a single-car accident that involved Harris. After an investigation, Harris was arrested and charged with OVI.

{¶4} Harris filed a motion to suppress all the evidence obtained during the accident investigation. Harris alleged that Trooper Miller had no reasonable suspicion to check his eyes. Harris claimed that Trooper Miller delayed his transport to the hospital to question him. Thus, the trooper placed Harris in custodial interrogation requiring that Harris be read his *Miranda* rights and Harris unequivocally invoked his right to counsel. Finally, Harris asserted that the field sobriety tests Trooper Miller administered were not in substantial compliance with the National Highway Transportation Safety Administration's (NHTSA) regulations.

{¶5} The court held a suppression hearing. The State's only witness was Trooper Miller, who testified that upon arriving to the accident scene, he observed a white Camry that had overturned after striking a guardrail and a buried cable box. Trooper Miller parked his cruiser and approached an emergency squad that was at the scene. Trooper Miller stated that Harris was in the squad.

{¶6} Trooper Miller testified that upon entering the squad he "detected the odor of an alcoholic beverage." Harris told the trooper that black ice caused his accident. Trooper Miller stated that the weather conditions were clear and the road was dry. He did not observe any black ice. Trooper Miller noticed that Harris' eyes were "red and glassy." His "words were very slow" and "mumbling." Trooper Miller stated that Harris denied drinking alcohol. When asked if Harris used marijuana, Trooper Miller asserted he detected the odor of marijuana and that Harris admitted that he had a medical marijuana card. Trooper Miller also testified that while conducting an administrative inventory of Harris' vehicle, he discovered a "bottle of liquor[,]" but could not recall the brand. Trooper Miller stated that Harris had no visible injuries.

{¶7} Trooper Miller testified as part of his investigation, he performed field sobriety tests upon Harris. He asserted that he was trained to conduct field sobriety tests, including the horizonal gaze nystagmus test (HGN), which is standardized by the NHTSA. The first step in applying the HGN test is "premedical screening," which ensures that the test subject has no injuries that could invalidate the test results. Trooper Miller performed the premedical screening on Harris and determined that he did not have any injuries that would invalidate the HGN test. The trooper then performed the HGN test and observed six positive indications out of six possible indicators from Harris that he was under the influence of alcohol.

{¶8} Trooper Miller testified that he also administered the Vertical Gaze Nystagmus ("VGN") test upon Harris. He stated that he detected vertical

nystagmus in Harris' eyes, which was also an indication that he was under the influence.

{¶9} There were other field sobriety tests that could have been administrated as well, including the walk-and-turn and one-leg-stand tests. However, Trooper Miller did not administer these tests to Harris because he was being prepared for transport to the hospital. Trooper Miller testified that Harris was transported to the hospital in Adena. Upon his release from Adena, Harris was transported to the Chillicothe Patrol Post, where he provided a urine sample.

{¶10} Trooper Miller admitted that when he spoke to Harris at the accident scene, Harris made a comment about wanting a lawyer. However, the trooper told Harris that he was merely asking routine questions that he asks at every crash.

{¶11} On November 1, 2022, the trial court issued a judgment entry that summarily overruled Harris' motion to suppress the evidence.

{¶12} On November 29, 2022, Harris went to trial on the OVI charge. After brief opening statements by counsel for the State and for Harris, the State presented one witness, Trooper Miller.

{¶13} Similar to the suppression hearing, Trooper Miller testified about his investigation of Harris' automobile accident. Trooper Miller recounted Harris' single car crash and the steps that he took to investigate the crash, including his administration of the HGN and the VGN tests on Harris, and that the results of said tests indicated that Harris was OVI.

{¶14} The defense also called a single witness, Eric Price. Price was the paramedic who treated Harris after his accident. Price could not recall the details of the accident, but testified that he completed a patient-care report regarding Harris' treatment. He stated that the report included his observations of Harris after the crash. One of those observations was whether Harris was impaired by drugs or alcohol. The report stated "none reported."

{¶15} There was also a section of the report that asked whether there was evidence of alcohol and drug impairment. It was marked "no."

{¶16} Price was asked if he could recall whether or not Harris had an odor of alcohol. Price said he could not recall, but, if he had, then he would have put it in his report. Price testified that he asked Harris whether he had used drugs or consumed alcohol and the report indicated none reported. Price further confirmed that he was required to accept the answers that Harris provided.

{¶17} Price confirmed that his purpose is patient care, not law enforcement. Price admitted that he was not trained in any kind of "advanced detection of OVI or clues of impairment."

{¶18} The jury found Harris guilty of OVI, with three or more priors in the past ten years, making it a fourth-degree felony. The court sentenced Harris to three years of community control. It is this conviction that Harris now appeals.

ASSIGNMENT OF ERROR

CHRISTOPHER HARRIS'S TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL.

{¶19} Harris maintains that his trial counsel was ineffective for failing to present the paramedic's report and testimony at his suppression hearing. Harris

maintains that to show counsel is ineffective, the defendant must show that counsel's performance was deficient and prejudicial, i.e., but for the deficient representation there is a reasonable probability that the outcome of the proceeding would have been different.

{¶20} Harris asserts that a law enforcement officer must have reasonable suspicion of OVI before administering field sobriety tests. The trooper testified that Harris (1) was driving and crashed, (2) had red, glassy eyes, (3) mumbled and jumbled together his words, (4) had droopy eyelids, (5) had an odor of alcohol and marijuana, and (6) had a medical marijuana card.  Harris asserts that the paramedic's testimony (at trial) contradicted many of those observations. However, Harris claims, the paramedic testified unequivocally that he documented any relevant observations he made the night of the accident and Harris asserts that the paramedic did not document anything about red, glassy eyes, droopy eyelids, mumbled or jumbled speech, or an odor of alcohol. However, because Harris' trial counsel never called the paramedic as a witness at the suppression hearing, the judge was unable to consider this conflicting testimony.

{¶21} Harris maintains that if the trial court had heard this testimony there was a reasonable probability that it would have found that the trooper did not have reasonable suspicion that Harris was OVI so the field sobriety tests would not have been justified.  Without the results from the field sobriety tests, the only evidence that Harris was under the influence was the conflicting testimony, which would have been insufficient to support an OVI conviction.  Therefore, Harris

maintains that there was a reasonable probability that his trial counsel's failure to call the paramedic to testify at the suppression hearing would have changed the outcome of his trial. Consequently, he claims that his trial counsel was ineffective for not calling the paramedic to testify at the suppression hearing.

{¶22} In response, the State argues that even if Harris' trial counsel would have called the paramedic to testify at the suppression hearing to challenge whether Trooper Miller had reasonable suspicion to conduct field sobriety tests, the argument was "invalid." Relying on *State v. Andrews*, the State asserts that the trooper's reasonable suspicion to conduct field sobriety tests is " 'viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold.' " 57 Ohio St.3d 86, 87-88 (1980). Therefore, the State argues that only the trooper's observations and his articulations of them are what is relevant in a suppression hearing. Furthermore, a paramedic is not trained in law enforcement, "so his testimony cuts more to the merits of the case, rather than speaking to whether the government infringed on [Harris'] constitutional Fourth Amendment rights."

{¶23} The State also argues that Harris employed a strategy waiting until trial to have the paramedic testify where he could "cast aspersions on the credibility of the trooper with the jury."

{¶24} Finally, the State argues, that even if Harris' trial counsel should have called the paramedic to testify at the suppression hearing, the decision to not have the paramedic testify until trial did not prejudice Harris because the standard of proof at trial is beyond a reasonable doubt, which is higher than

reasonable suspicion or probable cause.  And the jury convicted Harris of OVI under that higher standard of proof.

{¶25} Harris responded in a reply brief.  Harris first agreed that "the totality of the circumstances 'are to be viewed through the eyes of the reasonable and prudent police officer[.]' "  However, he claims that standard has no impact on assessing whether a police officer is credible.  Had the paramedic been called to testify, he would have challenged Trooper Miller's credibility regarding whether Harris exhibited observable signs of being under the influence.

{¶26} Harris also alleges that the paramedic's testimony included "all relevant observations" in his report regarding Harris.  Specifically, the paramedic did *not* observe, or include in his report, that Harris had red glassy eyes, droopy eyelids, mumbled and jumbled words, or have an odor of alcohol or marijuana.

{¶27} Harris also admits that the paramedic was not trained to interdict impaired drivers, but he was trained to make accurate observations regarding proper medical care.  His lack of law enforcement training did not impact his observational skills.

{¶28} Lastly, Harris argues at the reasonable-suspicion stage, the court's credibility determination included only considering the totality of the circumstances before the nystagmus test was administered.  Thus, it would have been the credibility of the trooper's testimony compared to the credibility of the paramedic's testimony.  Harris claims that the trooper's investigatory motivation was "far more susceptible to confirmation bias."  Harris maintains that if the paramedic's testimony and report had been presented at the suppression

hearing, then there is a reasonable probability that the outcome of Harris' trial would have been different.

### A. Law

### 1. Standard of Review

**{¶29}** To prove ineffective assistance of counsel, a petitioner "must show (1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that, but for counsel's errors, the proceeding's result would have been different." *State v. Short*, 2011-Ohio-3641, ¶ 113 (4th Dist.), citing *Strickland v. Washington*, 466 U.S. 668, 687-688 (1984). Therefore, "[f]ailure to establish either element is fatal to the claim." *State v. Jones*, 2008-Ohio-968, ¶ 14 (4th Dist.).

**{¶30}** "In Ohio a properly licensed attorney is presumed competent." *State v. Ruble*, 2017-Ohio-7259, ¶ 47 (4th Dist.), citing *State v. Gondor*, 2006-Ohio-6679, ¶ 62. Therefore, Harris has the burden of proving that his trial counsel was ineffective. *Id.* "It is generally presumed that the tactical decision of calling or refusing to call witnesses will not sustain a claim of ineffective assistance of counsel." *State v. Brown*, 2023-Ohio-3906, ¶ 69 (5th Dist.), *State v. Coulter*, 75 Ohio App.3d 219, 230 (12th Dist. 1992); *State v. Williams*, 74 Ohio App.3d 686, 695 (8th 1991); *State v. Johnson*, 2014-Ohio-657, ¶ 38 (5th Dist.). "Even debatable trial tactics and strategies do not constitute ineffective assistance of counsel." *State v. Martin*, 2005-Ohio-1369, ¶ 20 (2d Dist.), citing *State v. Clayton*, 62 Ohio St.2d 45 (1980). "The mere failure to subpoena

witnesses for a trial is not a substantial violation of defense counsel's essential duty absent a showing of prejudice." *State v. Coulter*, 75 Ohio App. 3d 219, 230 (12th Dist. 1992), citing *State v. Hunt*, 20 Ohio App.3d 310, 312, (9th Dist. 1984).

**{¶31}** " 'In order to overcome this presumption, the petitioner must submit sufficient operative facts or evidentiary documents that demonstrate that the petitioner was prejudiced by the ineffective assistance.' " *State v. Avery*, 2024-Ohio-3094, ¶ 17 (4th Dist.), quoting *Gondor* at ¶ 62. "To demonstrate prejudice, [Harris] 'must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *Id.*, quoting *Strickland* at 694. Mere speculation cannot support the prejudice requirement of an ineffective assistance of counsel claim. *State v. Short*, 2011-Ohio-3641, ¶ 119. That is, the reasonable probability cannot arise from speculation.

### 2. Reasonable Suspicion and Field Sobriety Tests

**{¶32}** "Under Ohio law, a peace officer's extension of a consensual encounter to 'request that a driver perform field sobriety tests "must be separately justified by specific, articulable facts showing a reasonable basis for the request." ' " *State v. Murphy*, 2023-Ohio-1419, ¶ 21 (6th Dist.), quoting *State v. Watkins*, 2021-Ohio-1443, ¶ 25 (6th Dist.), citing *State v. Trevarthen*, 2011-Ohio-1013, ¶ 15 (11th Dist.), quoting *State v. Evans*, 127 Ohio App.3d 56, 62 (11th Dist.1998); *State v. Matzinger*, 2017-Ohio-324, ¶ 34 (4th Dist.) ("Upon a lawful traffic stop, an officer must have reasonable suspicion of OVI before

administering field sobriety tests.").  Reasonable suspicion "is based on specific and articulable facts that criminal behavior has occurred or is imminent."  *State v. Hairston*, 2019-Ohio-1622, ¶ 9, citing *Terry v. United States*, 392 U.S. 1, 30 (1968).

{¶33} "The determination whether an officer had reasonable suspicion [of criminal activity] must be based on the totality of circumstances 'viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold.' "  *Id.*, ¶ 10, quoting *State v. Andrews*, 57 Ohio St.3d 86, 87-88.  "A court reviewing the officer's actions must give due weight to his experience and training and view the evidence as it would be understood by those in law enforcement."  *Andrews* at 88, citing *United States v. Cortez*, 449 U.S. 411, 417 (1981).  "[A] trained officer draws inferences and makes deductions—inferences and deductions that might well elude an untrained person."  *Cortez* at 418.

{¶34} Courts look to numerous indicators to evaluate whether a law enforcement officer has reasonable articulable suspicion that a driver is under the influence.  For example, courts have held that "[w]here a non-investigatory stop is initiated and the odor of alcohol is combined with glassy or bloodshot eyes *and further indicia of intoxication* . . . reasonable suspicion exists." (Emphasis sic.)  *State v. Dye*, 2021-Ohio-3513, ¶ 68 (6th Dist.), quoting *State v. Beeley*, 2006-Ohio-4799, 2006, ¶ 16 (6th Dist.); *State v. Wood*, 2023-Ohio-3099, ¶ 34 (2d Dist.).  " '[F]urther indicia of intoxication' that [have been] found sufficient to provide an officer with reasonable suspicion include admission to consuming

alcohol, *slurred speech*, and fumbling or searching for a driver's license or registration paperwork." (Emphasis added.) *Dye* at ¶ 68, citing *Beeley* at ¶ 16.

**{¶35}** Additionally, "[a] 'single vehicle accident suggests erratic driving from which impairment could be inferred.' " *State v. Teeters*, 2002-Ohio-6001, ¶ 11 (7th Dist.), quoting *State v. Conover*, 23 Ohio App.3d 161, 163 (9th Dist. 1985). *See also State v. Cunningham*, 2017-Ohio-377, ¶ 16 (7th Dist.). This inference is even more compelling when there are no "significant outside factors" contributing to the accident. *Cunningham* at ¶ 16, quoting *State v. Heiney*, 2007-Ohio-1199, ¶ 23 (11th Dist.).

## B. Analysis

**{¶36}** At the suppression hearing, Trooper Miller testified about observations he made of Harris that other courts have found support reasonable suspicion of intoxication, including that Harris had an odor of alcohol, his eyes were glassy and bloodshot, and his speech was jumbled and "very slow." *See Dye* and *Wood, supra*. Moreover, Harris told Trooper Miller that black ice caused his accident even though the weather was clear and the road was dry that day. Harris also denied that he had been drinking, but admitted that he had a medical marijuana card.

**{¶37}** At the trial, the paramedic, Price, testified that he could not recall from memory the events from Harris' accident, but was asked to read from a patient care report that he had prepared that day. The report indicated that Harris was not impaired by drugs or alcohol. He also testified that the patient care report contained observations that he made of Harris. Price was asked if he

recalled whether Harris had an odor of alcohol. He stated that he could not recall, but claimed, if he had, he would have put that in the report.

{¶38} However, on cross examination, Price testified that the patient-care reports are auto-populated on a computer in the squad while on scene. Price also testified that when he is treating a person, he is required to ask him or her whether they are under the influence of drugs or alcohol, and absent evidence to the contrary, he must accept their response. Price stated that Harris told him (Price) that he did not use drugs or alcohol that day.

{¶39} While some of Price's testimony may have been inconsistent with Trooper Miller's observation that Harris had an odor of alcohol, the trooper made other observations and was privy to facts that supported his suspicion that Harris could have been under the influence of alcohol. For example, Trooper Miller testified that Harris' eyes were red and glassy and his speech was slow and jumbled. Trooper Miller also maintained that Harris was involved in a single-vehicle crash and that Harris believed his car crash was caused by black ice. However, Trooper Miller testified that the weather was clear and the road surface was dry that day. Price never specifically addressed, let alone refuted any of these observations or facts.

{¶40} Furthermore, Trooper Miller was trained to interdict drivers who were under the influence of alcohol and drugs, while Price was trained to treat patients. Price had never been trained in advanced detection of OVI or clues of impairment. While their powers of observation may have been the same or similar, they were looking for different things. Trooper Miller was looking into

what caused the single-car accident including the investigation of the driver's culpability.  Price, on the other hand, was observing his patient for the purpose of treating him.  As an expert in assessing whether drivers are intoxicated, the trial court afforded due weight to Trooper Miller's observations in denying Harris' motion to suppress.  *Andrews*, 57 Ohio St.3d at 88.  Even if Price had testified at the suppression hearing, it is unclear whether the trial court would have afforded his testimony similar weight to that of the trooper's because Price had not been trained to interdict intoxicated drivers.

{¶41} Considering the aforementioned facts, even if Price had been subpoenaed to testify at the suppression hearing, we find it is speculative that the trial court would have found Price's testimony persuasive enough to discredit Trooper Miller's testimony and grant Harris' motion to suppress.  Speculation is insufficient to show prejudice.  Absent prejudice, Harris' ineffective assistance of counsel claim fails.

CONCLUSION

{¶42} Because Harris cannot show that there was a reasonable probability that the trial court would have granted his motion to suppress had his trial attorney subpoenaed Price to testify at the suppression hearing, we overrule his sole assignment of error.  Accordingly, we affirm the trial court's judgment entry of conviction.

**JUDGMENT AFFIRMED.**

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED and appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the ROSS COUNTY COURT OF COMMON PLEAS to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. and Hess, J.: Concur in Judgment and Opinion.


For the Court,


BY: _____
Kristy S. Wilkin, Judge


# NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**